## Commonwealth, Appellant, *v.* Curtis Publishing Company.

300

Argued September 30, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*David Fuss,* Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for appellant.

*Wm. H. Wood,* with him *Chas. W. Hull, Leon D. Metzger, Geo. Ross Hull* and *Hull, Leiby & Metzger,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 22, 1949:

The Commonwealth of Pennsylvania appeals from the judgment of the Court of Common Pleas of Dauphin County, which held that the Curtis Publishing Company, a Pennsylvania corporation, was entitled to $3,818.66, this sum being the amount which the court adjudged to be an overpayment by the corporation of its excise tax for the year 1942.

This corporation being engaged in business in Pennsylvania was subject to the provisions of the Corporate Net Income Tax Act, which under the facts here present provides for a tax of 7% of this corporation's net income for the fiscal year 1942, subject to certain allocations.

In the settlement of the Company's Corporate Net Income Tax Account for the year 1942 whatever the Company received as interest on *United States Securities* was *included* in the "net income" on which the tax was computed, while whatever the Company received as interest on *state and municipal securities* and as dividends on corporate stock were *excluded* from such "net income".

The Company contends that the *inclusion* of interest on United States securities and the *exclusion* of interest on state and municipal securities from the tax computing base amounted to such a discrimination against United States securities as is prohibited by the United States Supreme Court's interpretation of certain pro-

visions of the United States Constitution.[1] The Commonwealth denies that it has discriminated against United States securities in imposing the tax in question.

The question involved in this case arises from an inter-relationship which has been established between the Pennsylvania Corporate Net Income Tax Act and the Federal income tax legislation. When the former Act was adopted, it contained the following definition of net income: " 'Net income.' 1. In case the entire business of the corporation is transacted within this Commonwealth, net income for the calendar year or fiscal year as returned to, and ascertained by the Federal Government,[2] subject, however, to any corrections thereof, for fraud, evasion, or error as finally ascertained by the Federal Government. . . .;

"2. In case the entire business of any corporation . . . is not transacted within this Commonwealth, the tax imposed by this act shall be based upon such portion of the net income of such corporation for the fiscal or calendar year, as defined in clause one hereof, as may be deter-

---

[1] The constitutional provisions involved are Article VI, Clause 2, which makes the Constitution of the United States "the supreme Law of the Land; and the Judges in every State shall be bound thereby"; and Article I, Section 8, Clause 2, of the Constitution which grants Congress the power "To borrow Money on the credit of the United States".

[2] Section 4 of this Act provides further that when a corporation reports to the federal government on the basis of a fiscal year such report shall set forth:

(a) A true copy of its return to the Federal Government of the annual net income arising or accruing in the calendar or fiscal year next preceding, or such part or portions of said return, as the department may designate.

(b) If no return was filed with the Federal Government, the report made to the department shall show such information as would have been contained in a return to the Federal Government, had one been made, and

(c) Such other information as the department may require.

mined by allocations and apportionments made as follows:"

This Act also provides that "When a corporation reports to the Federal Government on the basis of a fiscal year, and has certified such fact to the department as required by section four of this act, in which case, such tax at the rate of seven per centum shall be levied, collected, and paid upon all net income received by, and accruing to, such corporation during the fiscal years . . ."

The definition of net income thus adopted by the Legislature led the taxing authorities of the Commonwealth of Pennsylvania, under the authority of Section 4 of the Pennsylvania Act, to incorporate in the Pennsylvania Report forms, certain portions from the Return forms used by the Federal Government.

When the Pennsylvania report form for 1935 was prepared, the portion of the Federal return form used in arriving at "net income" was copied exactly, as page one of the Pennsylvania form. Inasmuch as the Pennsylvania Corporate Net Income Tax Act provided that the base of the Pennsylvania tax should be the "net income returned to and ascertained by the Federal Government," this incorporation of a part of the Federal return was seemingly in accord with the Pennsylvania Act.

However, difficulties immediately arose because of the fact that this "net income" figure arrived at under the Federal return, and under the portion of the Federal return incorporated in the Pennsylvania report, included interest received on United States securities, whereas interest on state and municipal securities was excluded.

Interest from state and municipal securities, and interest on certain United States securities, which are wholly exempt by Acts of Congress from all Federal income tax liability, are specifically excluded from this "net income" figure by operation of Section 22(b)(4)

of the Internal Revenue Code, but all other interest on United States securities is included in this "net income" figure. Thus, the adoption of the "net income returned to and ascertained by the Federal Government" as the *base* for the assessment of the Pennsylvania excise tax resulted in taxation *by the State as measured by a base which included certain interest on United States securities, whereas interest on all state and municipal securities was excluded.* The appellee contends that this situation presents a case of *un*constitutional discrimination by the State *in favor of its own securities* and *against the securities of the United States.*

Certain taxpayers of Pennsylvania took appeals under Section 1104 of the Fiscal Code of 1929, P. L. 343, 72 P.S. 1104, to this treatment of interest on United States securities for the year 1935. On May 8, 1939, the Commonwealth met this objection by stipulating to judgment one of such appeals which had been filed by the Philadelphia Felt Company to No. 624, Commonwealth Docket 1938, from a settlement of its 1935 corporate net income tax account, in which interest on United States securities had been subjected to tax in the manner referred to above.

Pursuant to this stipulation, all interest on United States securities which had been included in the "net income" figure adopted from the Federal return was deducted from the tax base. As a result of this stipulation, the Department of Revenue, in a ruling issued June 28, 1939, provided that, in those cases in which taxpayers had claimed a deduction for interest on United States securities in Petitions for Resettlement involving the tax years 1935 to 1937, inclusive, the interest on United States securities should be deducted in full from the "net income" before computing the tax. This ruling of the Department of Revenue further provided that, for the tax year 1938 and thereafter, interest on United

States securities should be deducted from the net income in all cases of original settlement.

Due to the fact that the stipulation in the case of Commonwealth v. Philadelphia Felt Company was not made until May 8, 1939, settlements or resettlements of the Pennsylvania Corporate Tax so as to exclude interest from United States securities from the Pennsylvania tax base were made for the years 1936, 1937 and 1938. This adjustment was effected by means of an "independent deduction" of all interest received on United States securities from the net income figure previously filed by the corporate taxpayers, but the Pennsylvania tax forms themselves were not amended. Beginning with the taxable year 1939, an additional portion of the federal corporate income tax return form was incorporated in the Pennsylvania tax form which amendment consisted of adding two lines used on the federal form to arrive at "adjusted net income". "Adjusted net income" was at this time utilized in the federal form as the base in computing the "normal tax" on corporate income as distinguished from "surtax". Prior to 1941 interest on United States securities was included in computing "net income" on the federal forms but this interest was deducted from "net income" in arriving at "adjusted net income" on which "normal tax" was payable. As a result, "adjusted net income" was "net income" less interest on United States obligations. See 26 U. S. C. A. Internal Revenue Acts, 1924 to date, 1938 Act. p. 1001, et seq. §13(a). The effect of using federal "adjusted net income" as a base for the Pennsylvania Corporate Income Tax resulted in automatically eliminating all interest on United States securities from the Pennsylvania tax base. This method was used in 1939 and 1940.

However, the Public Debt Act of 1941, effective March 1, 1941 (February 19, 1941, C. 7, Sec. 4, 55 Stat. 9) made a vital change in the composition of "adjusted

net income" for federal tax purposes. This Act provided, in part, as follows: "Sec. 4. (a) Interest upon, and gain from the sale or other disposition of, obligations issued on or after the effective date of this Act by the United States, or any agency or instrumentality thereof shall not have any exemption, as such, and loss from the sale or other disposition of such obligations shall not have any special treatment, as such, under Federal tax Acts now or hereafter enacted;" Then follow exceptions inapplicable here. As a result of this statute, the interest on practically all United States securities issued on or after March 1, 1941, became wholly subject to Federal income tax liability—both normal tax and sur-tax. It followed that interest on United States securities issued on or after March 1, 1941, was no longer included in the deduction of interest on United States securities *used in the Federal return in arriving at "adjusted net income"*. Because of the foregoing, the utilization by this Commonwealth of the taxpayer's *federally found* "adjusted net income" *as the Pennsylvania tax base* became ineffective to exclude from such base interest on United States securities issued on or after March 1, 1941.

Notwithstanding this fact the Commonwealth continued to use "adjusted net income" as the tax base for the year 1941 and thereafter, thus including in the taxable income all interest on United States securities issued on or after March 1, 1941.

During the years from 1935 to 1942, inclusive, interest on state and municipal securities was entirely exempt from Federal income tax liability and was not included in either gross or net income under the Federal returns.

During the year 1942 the company received interest on state, municipal and foreign securities as follows:

Pennsylvania City. County, Borough, etc.   $19,256.25
Commonwealth of Pennsylvania securities   48,704.09
Republic of Panama securities .........    1,531.56
                                          _____

    Total ........................... $69,491.90

This interest was entirely excluded from gross income,. net income, and adjusted net income under the Federal return and was, therefore, not included in the figure of $125,713.37 used as the base in computing the defendant's 1942 corporate net income tax liability.

During the year 1942 the company received interest on United States securities in the total amount of $76,251.05. Of this amount, $381.91 represented interest on securities which were wholly exempted from Federal income tax liability, and was therefore excluded from the gross income and adjusted net income under the Federal return; and $479.52 represented interest on certain United States securities exempt from Federal normal income tax, but which was subject to Federal sur-tax. These two items were excluded from the figure of $125,713.37 used by the Commonwealth of Pennsylvania as a base for computing the 1942 corporate net income tax liability. The balance of the total amount of interest on United States securities received by the defendant in 1942, amounting to $75,389.62, represented interest on United States securities issued on and after March 1, 1941, which, under the provision of the Public Debt Act of 1941, was wholly subject to Federal income tax liability and was included in the gross income, net income, and adjusted net income figures under the Federal return. This interest, in the amount of $75,-389.62 was also included in the figure of $125,713.37 used by the Commonwealth as the Pennsylvania tax base.

During the year 1942 the defendant received dividends on corporate stocks which it owned, in the amount of $758,565.68, and these dividends were deducted from the "adjusted net income" figure derived from the Fed-

eral return which was used by the Commonwealth in computing the Pennsylvania corporate net income tax.

The amount of the tax for 1942 was arrived at as follows:

1. Adjusted net income per "report of change" in income filed November 3, 1943, on which the settlement appealed from is based . . . . . . . . . . . . $1,033,923.16

2. Deductions allowed by Pennsylvania Corporate Net Income Tax Act

3. Federal taxes . . . . . . . .$149,644.11

4. Dividends . . . . . . . . . . . 758,565.68    908,209.79

5. Net income tax base per settlement appealed from . . . . . . . .  $125,713.37

Applying the three statutory allocation fractions to this net income resulted in net income taxable in Pennsylvania in the amount of $90,966.70, and the tax, at the rate of seven per cent., amounted to $6,367.67.

Since the 1942 corporate net income tax which was properly due amounted to $2,549.01 this sum was deducted by the Court below from the above sum of $6,367.67 and the result showed an overpayment of $3,818.66. This overpayment was 7% of the interest the company received on United States securities, after applying to those securities the allocations and apportionments required under the taxing Act when the entire business of the corporation is not transacted within this Commonwealth.

Pennsylvania in imposing its excise tax on the net income of the Curtis Publishing Company permitted deductions of the interest received on securities of the state and its subdivisions and provided for adjustment of the tax base by way of deductions therefrom of dividends on corporate shares but did not permit deductions of the interest paid on United States obligations. This anomaly arises from the fact that the Pennsylvania

Taxing Act takes the corporation's annual return as made to and ascertained by, the Federal government as the basis of the annual tax it imposes on corporations doing business in Pennsylvania. But this *bookkeeping* fact does not affect the *political* fact that the command to tax the net income emanates from the sovereignty of Pennsylvania and not from the sovereignty of the United States. By adopting this mode of *ascertaining* the tax to be imposed Pennsylvania did *not* delegate to the Federal government any of the State's power to tax. *The act of taxing is the act of the Commonwealth of Pennsylvania.*[3] See *Commonwealth v. Warner Bros. Theatres, Inc.*, 345 Pa. 270, 27 A. 2d 62 (1942).

If this tax so *determined* results in discrimination against the *securities of the United States it is invalid* because *discrimination* by any state against the United States securities has uniformly been interdicted by the decisions of the United States Supreme Court.[4] This inhibition of all discrimination by one sovereignty, national or state, against the securities of the other is essential to the maintenance of the American system of duality of government. It is based on a recognition of the fact that the well-being of the dual sovereignties requires that neither should do anything that would tend to cripple the governmental functions of the other. As the marketing of Federal securities is vital to the Federal government's financial soundness and as the State's well-being is promoted by the Federal government's well-being, State governments will not do anything prejudicial to that other government's well-being. The Federal government for like reasons will do nothing prejudicial to the State's well-being. Self-interest recom-

---

[3] "A" may decide to conform his conduct to "B's" standard of conduct in a given situation but nonetheless the responsibility for "A's" acts is his own.

[4] Neither the Federal nor the various State constitutions contain any *express* reference to such discrimination.

mends this policy and the decisions of the United States Supreme Court require it.

In the historic case of *M'Culloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579 (1819), the basic issue involved was whether the State of Maryland had power to tax a branch of the Bank of the United States. Maryland had enacted a statute which required any bank doing business in that State, but not chartered by the legislature thereof, to issue its notes only upon paper bearing stamps of specified denominations. This paper was sold by the State and payment of the amounts indicated by the stamps was required at the time of purchase of the paper. The statute provided that any institution could relieve itself of the necessity of complying with the foregoing requirements by paying the annual sum of $15,000 to the State. In striking down the Maryland statute Chief Justice MARSHALL, speaking for the United States Supreme Court, said: ". . . the power to tax involves the power to destroy; . . . If the States may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. . . . This was not intended by the American people. They did not design to make their government dependent on the States. . . . The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."

It is settled law that a state tax imposed directly upon United States securities or the interest derived therefrom cannot be sustained. In *Northwestern Mutual Life Insurance Co. v. Wisconsin,* 275 U. S. 136, the United States Supreme Court said: "It cannot be denied

(and denial is not attempted) that bonds of the United
States are beyond the taxing power of the states. Home
Savings Bank v. City of Des Moines, 205 U. S. 503, 509;
Farmers & Mechanics Bank v. Minnesota, 232 U. S. 516;
and First National Bank v. Anderson, 269 U. S. 341,
347. Certainly since Gillespie v. Oklahoma, 257 U. S.
501, 505, it has been the settled doctrine here that where
the principal is absolutely immune, no valid tax can be
laid upon income arising therefrom. To tax this would
amount practically to laying a burden on the exempted
principal. Accordingly, if the challenged Act, whatever
called, really imposes a direct charge upon interest de-
rived from United States bonds, it is pro tanto void."

In *Missouri ex rel. Missouri Insurance Co. v. Gehner,
Assessor of the City of St. Louis, et al.,* 281 U. S. 313,
the United States Supreme Court made the following
statement: "It is elementary that the bonds or other
securities of the United States may not be taxed by state
authority. That immunity always has been deemed an
attribute of national supremacy and essential to its
maintenance. The power of Congress to borrow money
on the credit of the United States would be burdened
and might be destroyed by state taxation of the means
employed for that purpose. As the tax-exempt feature
tends to increase and is reflected in the market prices
of such securities, a state tax burden thereon would ad-
versely affect the terms upon which money may be bor-
rowed to execute the purposes of the general government.
It necessarily follows from the immunity created by
federal authority that a State may not subject one to
a greater burden upon his taxable property merely be-
cause he owns tax-exempt government securities. Neither
ingenuity in calculation nor form of words in state en-
actments can deprive the owner of the tax exemption
established for the benefit of the United States. Nat'l
Life Ins. Co. v. United States, 277 U. S. 508, 519, and
cases cited. M'Culloch v. Maryland, 4 Wheat. 316."

If the Pennsylvania Corporate Net Income Tax is to be deemed a property tax, the inclusion of interest on United States securities in the tax base constitutes a direct tax upon such interest which is unconstitutional under the foregoing authorities. In most of the decisions in which the nature of the corporate net income tax was directly involved, it has been held that this tax is an excise tax upon the privilege of doing business in Pennsylvania, measured by the net income. See *Turco Paint and Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37; *Com. v. Warner Bros. Theatres, Inc.*, 345 Pa. 270, 27 A. 2d 62; and *Com. v. Electrolux Corp.*, 59 Dauph. 412, affirmed per curiam 362 Pa. 333.

The appellant cites several cases in support of the proposition that a state may impose a franchise tax upon domestic corporations for the privilege of exercising its franchise in the state and the tax may be based on income from *any* source, including dividends received on stocks and all interest received from federal, state, municipal or other bonds. One of these cases cited is the New York case of *Educational Films Corp. v. Ward*, 282 U. S. 379. In that case the income by which the tax was measured was derived in part from royalties on copyrights granted by the United States. It was held that the tax was legal. The Court said, in an opinion by Justice STONE: ". . . we cannot say that the rule applied by this Court for some seventy years, that a nondiscriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now; or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule." The important point to note is that the tax was *non*-discriminatory.

Appellant also cited the case of *Society for Savings v. Coite, 6 Wall.* 594, in which case the Connecticut Savings Banks and Societies for Savings were required by law to pay annually for the use of the State a sum equal to ¾ of 1% on the total amount of deposits in such institutions on July 1 of every year. It was held that the fact that a savings society so taxed has invested a part of its deposits in securities of the United States, declared by Congress, in the Act which authorized the issue to be exempt from taxation by state authorities, does not exempt the Society from taxation to the extent of deposits so invested. In that case also there was *no discrimination* against national securities in favor of state securities.

Appellant cites the case of *Tradesmens National Bank of Oklahoma v. Oklahoma Tax Commission,* 309 U. S. 560. Congress had granted states the power to tax franchises of national banking institutions. An Oklahoma statute imposed a franchise tax on national banks and a similar tax on state and other banks, which tax was based on net income. This statute contained a provision expressly including in gross income (from which net income was computed) interest from *tax-exempt federal securities,* which had *theretofore* been expressly excluded. The Supreme Court held the tax to be valid, saying: "A consideration of the course of judicial decision on R.S. 5219 and its predecessors can leave no doubt that the various restrictions it places on the permitted methods of taxation are designed to prohibit only those systems of state taxation *which discriminate in practical operation against national banking associations or their shareholders as a class. . . .*" (Italics supplied)

Appellant also cited the case of *Pacific Company, Ltd., v. Johnson,* 285 U. S. 480. A California corporation acquired municipal bonds at a time when, by the State constitution, they were declared to be exempt in the taxation. Subsequently, pursuant to a change in the

constitution, a statute subjected the corporation to a tax on the privilege of doing business in the State, measured by a specified percentage of its net income, in the computation of which the statute directed the inclusion of "all interest received from federal, state, municipal or other bonds." It was held that since no discrimination was involved and the tax was a franchise tax the tax was valid. Justice STONE said: "Thus, in our dual system of government, action of the one government in the proper exercise of its sovereign powers, regarded as innocuous and permissible notwithstanding its incidental effects on the other, *may become offensive and be deemed forbidden if it discriminates against the other.* State taxes which, *if non-discriminatory,* would be upheld, even though they reach or affect those engaged in interstate commerce, *are condemned if they discriminate against those so engaged,* by placing on them heavier burdens than those imposed on others within the state." (Italics supplied.)

Appellant also cited the case of *Plummer v. Coler,* 178 U. S. 115 and the case of *Orr v. Gilman,* 183 U. S. 278, in support of its statement that the Supreme Court of the United States has sustained as valid, state inheritance taxes, although measured by the value of United States bonds which are transmitted. In neither of those cases was there any discrimination as between federal securities and state securities. No case has been brought to our attention, and we have found none, in which the United States Supreme Court has upheld *any* tax imposed by a state if that tax discriminated either directly or indirectly against the securities of the United States. There is no decision of the United States Supreme Court which weakens in the slightest degree the mandate of that court as expressed in many cases that states cannot in their tax acts discriminate against the securities of the United States in favor of their own securities. The United States Supreme Court has been

consistent and adamant in its rulings that there must be equality of treatment by the state imposing taxes, either direct or indirect, on the respective securities of the state and nation.

The case of *Schuylkill Trust Company v. Pennsylvania*, 296 U. S. 113, involved the Pennsylvania tax on the shares of trust companies imposed under the Act of 1907, P. L. 640, as last amended by the Act of 1929, P. L. 673. Under this legislation, the value of the shares subjected to the tax was ascertained by adding together so much of the capital stock paid in, the surplus and undivided profits as was not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, or relieved from the payment of capital stock tax, or tax on shares. In practice, the method of determining the value of the shares was to add together the capital, surplus and undivided profits and deduct, either fully or proportionately, the value of shares of corporations liable to or relieved from the capital stock tax, or tax on shares.

During the year 1930, the Schuylkill Trust Company owned United States securities, and securities of Federal agencies and dependencies, of a value of $151,207 and, in addition thereto, shares of stock of a national bank with a value of $20,202. It also owned shares of stock of other corporations liable to, or relieved from the payment of, a capital stock tax or tax on shares.

In ascertaining the value of the shares of the company subject to the shares tax, the taxing officers of the Commonwealth added together the capital, surplus and undivided profits and deducted therefrom a proportion of the value of the shares of the other corporations liable to or relieved from taxation, including the shares of stock of the Philadelphia National Bank. No deduction whatever was made on account of the United States securities.

The Court of Common Pleas of Dauphin County, in a decision reported in 38 Dauphin 22 (1934), rejected the company's contention that a deduction should have been afforded United States securities, holding that, as the tax was a tax upon shares and not upon the assets of the trust company, those securities had not, in fact, been taxed. This ruling was affirmed by the Supreme Court of Pennsylvania in a decision reported in 315 Pa. 429 (1934). On appeal to the United States Supreme Court the Pennsylvania tax was held invalid as discriminating against the Federal securities and national bank shares. Mr. Justice ROBERTS, speaking for the Supreme Court, said: ". . . by the amendments to the Act of 1907 the measure of the tax is not in any sense the value of the shares as such, but a value reflected by *so much* of the net assets as is not represented by shares of Pennsylvania corporations already taxed or exempt from tax. . . . In specifications of objection filed with its appeal from the tax settlement in the Court of Common Pleas, the trust company insisted that all exempt shares (including the shares of the Philadelphia National Bank) should be deducted from the gross assets in full. This would exempt their full value rather than a proportion of their taxed value as ascertained by the use of the proportional method above described. The further objection was made that the method of settlement adopted resulted in discrimination against exempt securities issued by the United States or other federal instrumentalities, and that these should have been deducted at their full value from the gross assets before any computation of the tax."

The opinion then refers to the fact that the appellant Trust Company claimed that the tax was one upon assets, while the Supreme Court of Pennsylvania decreed the levy to be upon shares and not upon assets. The Court continues: "If the appellant is right the exaction

operates as a discrimination against Government securities and other assets exempt under federal law. Missouri Insurance Co. v. Gehner, 281 U. S. 313. If the tax is one truly upon that independent property evidenced by the ownership of a share of corporate stock its collection does not discriminate against United States securities. . . . If the tax is lifted from the shares of certain trust companies because those companies own only stocks already taxed or relieved from taxation by the State, and shares in other trust companies are taxed amongst whose assets there are United States bonds or other securities entitled to exemption because issued by federal instrumentalities, which are figured in the base of the tax, it is impossible to avoid the conclusion that the law discriminates in favor of the former and against the latter solely by reason of ownership of such federal securities."

Justice CARDOZO dissented (and was joined in his dissent by Justice BRANDEIS and Justice STONE). However, the position that the dissenters took does not support the position of the appellant in this case, while certain statements made in the dissenting opinion *do* tend to support the position of the appellee. Justice CARDOZO pointed out that the argument for the appellant in the *Schuylkill Trust Company* case was "that the tax might have been lawful if the shares had been valued without any deductions growing out of the nature of the capital, but that the moment a deduction was allowed in respect of any class, there was an unlawful discrimination against government securities unless the deduction was enlarged and made applicable to them. . . . At the time of the assessment the appellant was the owner of shares in corporations that paid a tax upon their capital to the Commonwealth of Pennsylvania . . . Except for certain shares in the Philadelphia National Bank . . . the assets did not include an interest in cor-

porations that paid a tax upon their shares as distinguished from one upon their capital. The appellant was also the owner, . . . of shares of stock in manufacturing corporations that were relieved from any tax. . . . The holding now is that the deduction of the shares of either of these classes is an act of discrimination forbidden by the national constitution unless investments in obligations issued by the national government are accorded the same favor."

Justice CARDOZO continued: "I read the cases otherwise. The statute was not passed as an act of 'unfriendly discrimination' . . . against the national securities, nor was it passed in aid of classes of investments with which the national securities are in substantial competition. . . . 'Unfriendly discrimination' might be inferred if securities of every kind were excluded from the reckoning with the single exception of the obligations of the national government. That would be an extreme case, the conclusion hardly doubtful. Even though hostility were not so pointed as in the case supposed, there might still be an invidious distinction if securities in substantial competition with evidences of indebtedness issued by the national government had been given a preferred position. Nothing of the kind appears." Justice CARDOZO adds: "The situation, then, is this. Vast classes of securities—bonds and notes of every kind, as well as shares of stock in many and varied enterprises—are in the same position for the purpose of the tax in suit as government bonds and notes. The few investments that occupy a different position are not comparable in kind or in attractiveness to the obligations of the government and do not substantially compete with them. To hold that there was discrimination here in any forbidden sense is to hold that bonds and notes of the United States must be deducted from the value of the shares if there is a deduction of any form of investment, no matter how

minute in amount or alien in quality. . . . discrimination . . . must be so marked as to justify the inference that it was unfriendly in design or at the very least it must favor forms of investment that are in substantial competition with government securities."

It is inferrable from Justice CARDOZO'S dissenting opinion that *if the securities of the State of Pennsylvania* (which *are* "in substantial competition with government securities") had been given "a preferred position", he would have adjudged the tax act as discriminatory and therefore pro tanto invalid.

The appellant attempts to distinguish the *Schuylkill Trust Co. v. Pennsylvania,* 296 U. S. 113, case from the instant case as follows: "(1) the Schuylkill case involved a property tax on shares in hands of shareholders of trust companies; the instant case involves an excise tax for a corporation's privilege of doing business in the Commonwealth; (2) the Schuylkill case involved affirmative legislative action granting exemptions which reflected a change in policy and resulting in what a majority of a divided Court termed 'discrimination'; in the instant case, there was no change in Pennsylvania legislation reflecting a reversal of policy, the only legislative change being on the part of the Federal Government which enacted the Public Debt Act of 1941."

As to "distinction" No. 1 it is sufficient to say that the Supreme Court of the United States furnished the answer when in its opinion in the *Schuylkill Trust Company* case it said: "We think that the issue of discrimination is not to be resolved by a choice between the two contentions as to the nature of the tax. . . . We must determine for ourselves the true nature of the tax by ascertaining its *operation and effect."* (Italics supplied) The Court in a footnote cites the case of *Senior v. Braden,* 295 U. S. 422, 429, in which the same Court said: "Our concern is with realities, not nomenclature."

As to the second "distinction" the statement does not go to the heart of the problem and contributes nothing to its solution. "Circumstances alter cases", and alter many other things besides, including the legal effect of an individual's act and the operative effect of a statute. A change of circumstances may make a constitutional statute unconstitutional or a lawful act unlawful.[5]

Before the Public Debt Act of 1941 which subjected all federal securities issued after March 1, 1941, to federal taxation, Pennsylvania had a right to make the Federal Corporate Income tax return the basis for the imposition of its excise tax on a corporation which was doing business in Pennsylvania, because at *that period* Pennsylvania by using the federal return as a tax base, did *not* tax the securities of either the national government or the state government. But after the United States decreed in 1941 that *its own* securities were taxable by the federal government, Pennsylvania no longer had a right to make the federal tax return the basis for its assessment of its corporate net income tax because by doing so *it* taxed United States securities while leaving *its own* securities *un*taxed. Under this change of circumstances effected by the Public Debt Act of 1941 the operative effects of the Pennsylvania Corporate Net Income Tax Act became discriminatory against the securities of the United States and to that extent that Act must be adjudged unconstitutional. Justice HOLMES,

---

[5] "A" may lawfully drive a car at the rate of 50 miles per hour on a highway at a place where he has the road all to himself, but if he drives at the same place at the same speed a short time later while children are playing there his act is unlawful. There are certain acts which if performed by Americans on the morning of December 8th, 1941, would have been lawful, but if performed late in the afternoon of the same day they would have been unlawful (or even treasonable) because in the meantime the United States had declared that a state of war existed between it and Japan.

speaking for the United States Supreme Court said in *Chastleton Corporation et al. v. Sinclair et al., Rent Commission of the District of Columbia, et al.,* 264 U. S. 543: "... A law depending upon the existence of an emergency *or other certain state of facts to uphold it* may cease to operate if the emergency ceases *or the facts change even though valid when passed."* (Italics supplied.)

It has often been held that the constitutionality of a statute must be "determined by the facts of each case" and that the validity of a statute may be affected by "a change in conditions." See *Missouri v. Chicago, Burlington & Quincy Railroad Company,* 241 U. S. 533; *Knoxville v. Knoxville Water Co.,* 212 U. S. 1; and *Chas. Wolff Packing Co. v. Court of Industrial Relations of the State of Kansas,* 262 U. S. 522.

In *Miller v. Milwaukee,* 272 U. S. 713, the constitutionality of the Wisconsin income tax was involved. A portion of the taxpayer's income consisted of dividends on shares which he owned in a Wisconsin corporation. The dividends paid by this corporation consisted partly of the interest received on United States bonds owned by it. The interest on these bonds was exempt from the Wisconsin income tax imposed upon the corporation, but the taxpayer was taxed with respect to the dividends received from the corporation. Speaking through Justice HOLMES the United States Supreme Court said: "If the avowed purpose *or self-evident operation of a statute is to follow the bonds of the United States* and to make up for its inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose *or special operation* it would be perfectly good." (Italics supplied)

The appellant cites the case of *People ex rel. Standard Oil Co. of New York v. Law,* 237 N. Y. 142, 142 N. E.

446 (1923). In that case interest on United States securities was included in the measure of the state tax on net income, while interest on state and municipal securities was excluded, but there was no discussion in that case of the possible discriminatory effect of this tax on United States securities. The subject of discrimination by the State in imposing the franchise tax was not even mentioned. Therefore, since there was no question raised about discrimination, the decision of the New York Court of Appeals in that case is no precedent in this one. In any event a decision of the Court of Appeals of New York on the question now before us would not prevail against the applicable decisions of the United States Supreme Court.

The appellant quotes at length from *Educational Films Corp. v. Ward*, 282 U. S. 379. In that case a New York statute taxed each domestic corporation of certain classes for the privilege of exercising its franchise in that State. The tax was payable in advance for each year beginning November 1st, and was at a specified rate on so much of the corporation's entire net income for its preceding fiscal year as was, under other provisions, allocated to its business carried on within the State. Net income was defined as embracing income *from any source*, and entire net income as meaning the total net income, including all dividends received on stocks and all interest received from *federal, state, municipal or other bonds*. The income upon which the tax was measured in that case was derived in part from copyrights by the United States. It was held that the tax *as measured* was not void as a tax on federal instrumentalities. The Supreme Court said, in an opinion by Justice STONE: "But the nature of a tax must be determined *by its operation* rather than by particular descriptive language which may have been applied to it. As was said in Macallen Co. v. Massachusetts, 279 U. S.

620, 625, 626 : '. . . neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty *to consider its nature and effect.* . . . this Court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be . . .' . . . there is a logical and practical distinction between a tax laid directly upon all of any class of government instrumentalities, which the Constitutions impliedly forbids, and a tax such as the present which can in no case have any incidence, unless the taxpayer enjoys a privilege which is a proper object of taxation, *and which would not be open to question if its amount were arrived at by any other non-discriminatory method.*" (Italics supplied) Justice STONE also quoted what Justice HOLMES said in *Miller v. Milwaukee,* supra, about the "self-evident operation" of a statute in determining whether the statute should stand or should fail as discriminatory.

The overpayment of the 1942 Corporate Net Income Tax by the Curtis Publishing Company was found by the court below to be $3,818.66. This meant that a portion of the company's taxed income amounting to $54,552 (after the required statutory allocation) was income derived from federal securities. Since there are approximately 38,000 corporations paying the Pennsylvania Corporate Net Income Tax and since a large proportion of these corporations presumably derive a portion of their income from their holdings of United States securities, it can be readily seen that for Pennsylvania to tax *these* securities while it does not tax *its own,* will to a very substantial degree impair the marketability of national securities in Pennsylvania. A discrimination effecting such a result cannot be dismissed as merely "casual or incidental" (as the appellant asserts). The United States Supreme Court has never hesitated to

strike down such state discrimination against national securities. Nor is there any merit in the contention that this discrimination was *not intended* by Pennsylvania but resulted from the passage of the Public Debt Act. The constitutionality of any statute cannot be determined by a consideration of the motives behind its enactment. As the Supreme Court of the United States has repeatedly pointed out, while a taxing act's character in respect to its being discriminatory against federal securities may be determined by its expressed or implied intention, *it may also be determined by its operation and effect.* Taxing acts (like human acts) usually take their character from their consequences.

No law can be understood until its purpose is understood. The purpose of the applicable constitutional provisions as enunciated by the Supreme Court is to prevent discrimination against securities of the United States which would be prejudicial to them when they are offered for sale in competition with state and municipal securities. When Pennsylvania *exempts* from taxation its own securities but *taxes*, directly or indirectly, the securities of the *United States* the latter securities are handicapped in their competition with the securities of Pennsylvania, among buyers in the market place. This handicapping is by implication proscribed by the Constitution of the United States.

The Corporation which finds its Pennsylvania annual tax bill increased by $3,500 because among its assets there is an income of $50,000 from *federal* securities ("allocated" to Pennsylvania) while its competitor which has a $50,000 income from *Pennsylvania* securities is taxed nothing on *those* securities will find no comfort in the assurance that the discrimination against it is merely "casual and incidental". A tax burden is never lightened by the label attached to it or by the fact that the burden took a roundabout way to reach the tax-

payer's back. If the discrimination above described is legally permissible no corporation taxpayer when purchasing government securities, will be as much inclined to buy securities of the national government as he will be to buy the tax-exempt securities of Pennsylvania.

We decide as follows:

1. Pennsylvania's exemption of corporations from taxation of interest on state and municipal securities under the state's corporate net income tax law is a tax exemption *granted by Pennsylvania* and that the inclusion for purposes of taxation of interest on United States securities under the corporate net income tax law (no matter by what indirect methods such inclusion is brought about) is a tax *imposed by Pennsylvania*. The legal effect of this State's basing its computation of tax on the net income returned to and ascertained by, the federal government is exactly the same as if the Commonwealth had prescribed the same tax base without any reference whatsoever to the "federal return".

2. Before the Public Debt Act of 1941 the use by the State of Pennsylvania of the Federal return for the purpose of determining the amount of the tax did *not* constitute any discrimination against the securities of the United States because prior to that Debt Act those securities were exempt from taxation by the federal government and when Pennsylvania *then* used the federal return for the purpose stated it was *not* taxing the income from federal securities.

3. The Public Debt Act of 1941 so changed conditions by making the interest on United States securities taxable by the federal government that when the State of Pennsylvania *continued* to use the federal return as the basis of its assessment there *resulted* an unconstitutional discrimination against the securities of the United States because the securities of Pennsylvania and its subdivisions still remained untaxable.

4. Pennsylvania's corporate net income tax which exempts from its impositions income from its own securities can operate conformably to the prescriptions of the United States Constitution as interpreted by the Supreme Court of the United States, *only* when the State deducts from the net income of the corporation taxed *all interest on United States securities also.* Unless this deduction is made those securities are not accorded by Pennsylvania the equality of treatment constitutionally required as between them and the securities of this Commonwealth.

The judgment is affirmed.

Mr. Justice JONES concurs in the judgment.