Commonwealth, Appellant, *v.* Mellon National Bank and Trust Co.

Argued May 26, 1953. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

Appeal, No. 27,

*Harry F. Stambaugh*, Special Counsel, with him *Robert E. Woodside*, Attorney General, for appellant.

*Charles E. Kenworthey*, with him *Roy J. Keefer, Joseph G. Robinson, Hull, Leiby & Metzger* and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. JUSTICE JONES, June 26, 1953:

The question raised by the Commonwealth on this appeal is whether the court below followed the proper formulae, as indicated by statutory and decisional law, for determining the Pennsylvania tax liability of the defendant National bank for the year 1934 on its issued and outstanding shares of capital stock. The matter came before the court below on the bank's appeal from the settlement of its tax for the year in question which the Board of Finance and Revenue had approved in the sum of $145,783.65. The appeal was tried in the court below without a jury on stipulated facts and un-objected-to exhibits and resulted in a final order directing entry of judgment in favor of the Commonwealth and against the defendant for $15,796.40 with direction to the Commonwealth to refund or credit the defendant in the sum of $129,987.25 representing the excess paid by the defendant on account of the tax on its shares for the year 1934 as finally settled by the Department of Revenue and approved by the Department of the Auditor General.

Section 5219 of the Revised Statutes of the United States (12 USCA §548) permits the States to impose a tax upon the shares of National banks, provided, inter alia, that "(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks."

By Act of July 15, 1897, P. L. 292, amended by the Act of May 31, 1933, P. L. 1130 (72 PS §1931), Pennsylvania imposed a tax upon the shares of State and National banks ". . . at the rate of four mills upon each dollar of the actual value thereof; the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the

surplus, and undivided profits, and dividing this amount by the number of shares . . . ." When this Act was passed and for some time thereafter, trust companies were not classed as banks. But, by Act of June 13, 1907, P. L. 640 (72 PS §2001), a tax was imposed upon the shares of trust companies ". . . at the rate of five mills upon each dollar of the actual value thereof," the actual value of each share to be ascertained by a calculation similar to that prescribed by the Act of 1897, supra.

For the year 1934, which is the only year here involved, the Act of 1907, supra, as last amended by the Act of May 31, 1933, P. L. 1132, allowed deductions from the total of the capital stock, surplus and undivided profits of trust companies, in ascertaining the actual value of their shares, to the extent of such companies' investments in shares of corporations liable to pay the Pennsylvania capital stock tax or specifically relieved therefrom by law. Corresponding deductions were not allowed by the Act of 1897, supra, in determining the actual value of the shares of State or National banks subject to tax under that Act. But, that is of no present moment. The defendant concedes that so long as the deductions allowed trust companies were limited to the value of the stock they owned in Pennsylvania corporations, any seeming inequality of treatment in respect of a National bank was adequately counteracted by the differential in millage favorable to a bank (State or National) and adverse to a trust company and that, since neither identity of the taxing formulae nor mathematical equality of the tax exaction is required, Section 5219 of the Revised Statutes was not violated.

It so happens that, in 1935, the Supreme Court of the United States held that an assessment of tax upon the shares of a trust company under the Act of 1907,

supra, violated the Federal Constitution in that the deduction allowed by the Act of 1907 for the value of the shares owned by the trust company in corporations subject to or expressly relieved from the Pennsylvania capital stock tax discriminated against Federal securities owned by the trust company for which a like deduction for assessment purposes was not allowed: see *Schuylkill Trust Co. v. Pennsylvania*, 296 U. S. 113. This court had held the assessment valid: see *Commonwealth v. Schuylkill Trust Company*, 315 Pa. 429, 173 A. 309. The Supreme Court's decision, in effect, amounted to an award of a deduction for the Federal securities owned by trust companies so long as a deduction for shares of a Pennsylvania corporation was allowed. As a result of the Supreme Court's ruling, the *Schuylkill Trust Company* case was remanded to the Court of Common Pleas of Dauphin County which revised the assessment by deducting additionally from the capital, surplus and undivided profits of the trust company the Federal securities owned by it. We affirmed the revision (*Commonwealth v. Schuylkill Trust Company*, 327 Pa. 127, 193 A. 638) and were in turn affirmed by the Supreme Court: see *Schuylkill Trust Co. v. Pennsylvania*, 302 U. S. 506.

It was the decision of the Supreme Court in the *Schuylkill Trust Company* case that gave rise to the defendant bank's present contention that the failure of the Board of Finance and Revenue to allow it a deduction for its Federal securities in determining the actual value of its shares subject to the tax imposed by the Act of 1897, supra, worked a discrimination against the bank's shares in violation of Section 5219 of the Revised Statutes.

Since 1923, Pennsylvania trust companies have been authorized and empowered to engage in the banking

business;[1] and it is undisputed that such companies were so engaged in 1934. It is also conceded that the money invested in the shares of Pennsylvania trust companies constitutes moneyed capital in the hands of individual citizens coming into competition with the business of National banks.

The Commonwealth argues, however, that the purpose of Section 5219 of the Revised Statutes was to prevent merely "hostile and unfriendly discrimination" against National banks, citing *Mercantile Bank v. New York,* 121 U. S. 138, 155 (and a train of cases in its wake), where it was said that,—"The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character." To that premise, the Commonwealth adds that the discrimination, if any, against the shares of the defendant bank under the Pennsylvania Act of 1897, supra, was caused by the decision of the Supreme Court in the *Schuylkill Trust Company* case and not by any statute or ruling by an official of the Commonwealth and, hence, not by "hostile and unfriendly" action. The Act of 1897, with its four-mill tax upon the shares of both State and National banks and without allowance of any deductions to either for assessment purposes, remained the same throughout and was applied in 1934 just as it always had been. Consequently, it is the Commonwealth's contention that Section 5219 of the Revised Statutes was

---

[1] See Act of May 9, 1923, P. L. 173 (repealed by Section 1602 of the Act of May 15, 1933, P. L. 624), and the Banking Code of May 15, 1933, P. L. 624, as amended to December 31, 1934.

not violated by the failure of the State's fiscal officers to allow a National bank a deduction to the extent of its holding of Federal securities. It must not be overlooked that changed circumstances may cause a tax assessment under an admittedly valid statute to be unconstitutionally discriminatory. In our own case of *Commonwealth v. Curtis Publishing Company*, 363 Pa. 299, 69 A. 2d 410, the impingement upon the Federal Constitution of the assessment under the Pennsylvania Corporate Net Income Tax Act, there involved, was not because of any invalidity in the statute but because of the federally altered circumstances to which it was applied. A State statute "may be valid when given a particular application and invalid when given another": *Concordia Fire Insurance Co. v. Illinois*, 292 U. S. 535, 545.

The defendant on its part points to the case of *First National Bank of Hartford, Wisconsin v. City of Hartford*, 273 U. S. 548, where Mr. Justice STONE, speaking for the Supreme Court, appears to have put at rest any idea that to be violative of Section 5219 of the Revised Statutes the discrimination must be hostile or unfriendly, when he said (pp. 560-561),—"Finally it is said that §5219 is directed to an unfriendly discrimination or hostile attitude on the part of a state and that here the Wisconsin legislation was not dictated by such considerations, since the challenged exemptions were merely incidental to the adoption of a state policy of substituting, so far as possible, an income for a personal property tax. But a consideration of the entire course of judicial decision on this subject can leave no doubt that state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares in the manner described are intended to be forbidden." In short, whether or not a State tax on the shares of a

National bank offends against Section 5219 of the Revised Statutes does not depend upon a hostile or unfriendly intent on the part of the taxing authority. In *First National Bank of Guthrie Center v. Anderson,* 269 U. S. 341, 348, it was said that "every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction [i.e., Section 5219 of the Revised Statutes]." We believe the true test of the validity of a State tax on the shares of a National bank to be the overall result produced regardless of the motive of the taxing authority.

The pertinent inquiry, then, is whether the tax assessed against the defendant bank for the year 1934 was at a greater rate than the tax on other moneyed capital in the hands of citizens of Pennsylvania coming into competition with the business of National banks.

As already stated, the Commonwealth concedes that the capital of trust companies is other moneyed capital such as Section 5219 of the Revised Statutes contemplates. Nor is the term "a greater rate" confined to the amount of the millage statutorily prescribed. The rate of taxation for comparative purposes within the intendment of Section 5219 is the proportion the tax assessed bears to the base taxed as determined by valuations, deductions, exemptions and like factors. In enacting Section 5219 of the Revised Statutes, ". . . Congress had in its mind an *assessment,* a *rate* of assessment, and a *valuation*; and, taking all these together, the taxation on [National bank] shares was not to be greater than on other moneyed capital": *People v. Weaver,* 100 U. S. 539, 545. The determination of the multiplicand (i.e., the tax base) was not left to the whim or arbitrary choice of a State. In *Boyer v. Boyer,*

113 U. S. 689, 691-692, the Supreme Court said that,—
". . . the validity of such State taxation [is] . . . to be determined by the inquiry, whether it was at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens, *and not necessarily by a comparison with the particular rate imposed upon shares in State banks*" (Emphasis supplied). See also *Pelton v. National Bank,* 101 U. S. 143, 145-146; and *First National Bank of Hartford, Wisconsin v. City of Hartford* and *First National Bank of Guthrie Center v. Anderson,* supra.

Notwithstanding that the facts of this case are wholly undisputed, different conclusions can be deduced therefrom, as the learned court below observed, depending upon the particular facts stressed or left out of the reckoning. No useful purpose would be served by our reviewing in detail the figures used by counsel in presenting their respective contentions. It is sufficient to say that the following finding of the court below is factually unassailable, viz., "The statistics . . . reveal that for all the companies involved [i.e., all of the National banks and trust companies in Pennsylvania], the national banks paid in the year 1934 almost twice the effective rate paid by trust companies. The Mellon National Bank paid at a slightly higher rate. The comparison of its tax in dollars with The Union Trust Company shows that the latter, with almost three times the capital, paid about one-half as much tax and at about one-fifth the effective rate." The Commonwealth's complaint with the foregoing finding is that it was not each of the 715 National banks in Pennsylvania that paid "almost twice the effective rate paid by trust companies" but only the 7 largest of such banks, which in the years 1931 to 1934 had invested a relatively large proportion of their capital in government bonds. Without a deduction therefor, they

paid taxes at substantially higher rates than did the trust companies. The court appropriately answered the argument by saying that "the test of discrimination can not be the nature of the capital investments which vary from year to year, so long as the investments are within the permitted class." From the finding above quoted, the court below properly concluded that "the Mellon National Bank for the year 1934 was taxed at a greater rate than was assessed upon other moneyed capital in the state coming into competition with it." Consequently, the assessment violated the restriction in Section 5219 of the Revised Statutes.

The court thereupon resettled the defendant's tax liability for the year 1934 by deducting from its capital stock paid in, surplus, and undivided profits the value of its United States securities and Federal Reserve Bank shares and to the actual valuation thus ascertained applied the four-mill tax rate prescribed by the Act of 1897, supra. The Commonwealth contends, however, that, having allowed the defendant the deduction for its Federal securities which, following the decision in the *Schuylkill Trust Company* case, supra, was allowed trust companies in assessing their tax under the Act of 1907, the rate of taxation applied to the defendant bank's taxable valuation should have been the five mills prescribed by the 1907 Act for a net increase of $3,949.10 in the judgment for the Commonwealth. The contention is obviously without merit. The shares of National banks are taxed in Pennsylvania by the Act of 1897 which prescribes a rate of taxation of four mills. The deductions allowable in ascertaining the taxable base can have no effect whatsoever upon the rate of taxation fixed by the Act. To apply any other rate would not only be without warrant of law but would constitute a flagrant violation of Section 5219 of the Revised Statutes.

Judgment affirmed.

Mr. Justice BELL dissents.

Mr. Justice CHIDSEY took no part in the consideration or decision of this case.