## Krasulak v. Waterbor and Douglass, Inc.

*Robert K. Young*, for plaintiff.

*Butz, Hudders, Tallman & Wieand*, for defendants.

HENNINGER, P. J., March 20, 1962. — Plaintiff rented a dump truck from defendant on October 4, 1957, and for four and one half hours used it for five trips from excavations at Holiday Inn, near Allentown, Pennsylvania, to his lot about two and one half miles away. On the sixth trip to his lot, with the truck loaded with ground, he rounded a left turn but upon entering a right turn on a narrow macadam road the steering mechanism failed to respond and the truck hit a utility pole.

Plaintiff's leg was jammed against the steering pole for 20 minutes until he was released and taken to the hospital with a fracture of the left femur, treated by open reduction and secured by a pin, which was removed about a year later. He lost 18 weeks of work immediately after the accident and three additional weeks when the pin was removed.

The jury rendered a verdict in favor of plaintiff for $3,200, and defendant has moved for judgment n. o. v. and for a new trial.

Plaintiff contends that proof of inability to steer a hired truck entitles him to get to the jury either on the theory of exclusive control or of common carrier liability and that he has further shown negligence on defendant's part in faulty inspection practices.

Since plaintiff has won the verdict, we accept the fact that the accident occurred because the truck failed to respond when he attempted to steer it along the curve in the road. That principle also disposes of defendant's contention that the jury could have inferred from the truck's leaving the road that plaintiff was guilty of negligence in his operation of the truck, since

all testimony and all inferences therefrom must be favorable to plaintiff: Rinaldi v. Levine, 406 Pa. 74, 76.

Plaintiff relies strongly upon Vitali v. Bankers Securities Corporation, 396 Pa. 230, in which plaintiff's child was injured when the handle of a baby stroller supplied by defendant department store came loose as she was descending a staircase, precipitating the child to the landing below. The court stated (p. 235):

". . . The law does not specify how long a store owner must test any given device each day in order to determine whether it is in safe condition. It does, however, impose on the store owner, who invites mothers and children into its establishment for the purpose of selling them commodities, the obligation not to injure them through the lack of due care . . ."

He also relies upon Saganowich v. Hachikian, 348 Pa. 313, but that is a much stronger case than this one and contains language damaging to plaintiff. There plaintiff was injured by caustic soda which spurted out of a drum when the plug shot out after only a half-turn of a normal 12 half-turns and the plug, when an attempt was made to replace it, instead of screwing into the opening, fell into the drum and showed that it had been held in place in the first place not by its threads but by a string wound about it.

The court in the Saganowich case, after stating that defendant owed plaintiff the duty of exercising reasonable care in making the drum safe for use, went on to say that a plaintiff's evidence must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well-supported belief in any inconsistent proposition, citing Whigham v. Metropolitan Life Insurance Company, 343 Pa. 149.

Defendant strenuously contends, from the concurring opinion in Kotal v. Goldberg, 375 Pa. 397, 405,

that the doctrine of exclusive control cannot apply. We agree with defendant that it does not apply but for the reason that it cannot be said to apply where plaintiff himself is the driver and where he has safely covered the same course five times before the accident occurred.

The five safe trips over the same road over a period of four and one half hours distinguish this case from the Vitali case, supra, for there plaintiff had operated the borrowed stroller for only five minutes over an even floor with only a forward pressure on the handle and the accident occurred on the first pull on the handle while easing the stroller down a flight of steps. In the Vitali case, there was not the strong probability here present that plaintiff's own operation of the vehicle caused the defect from which the damage arose.

The Supreme Court of Pennsylvania has decided that the bailor of motor vehicles for hire is not a common carrier (Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25) and that is no longer an open question.

If plaintiff is to recover, it must be on the basis of Restatement, Torts, §392.

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied:

"(a) if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if the supplier's failure to give to those whom he should expect to use the chattel the information required by the rule stated in §388 is due to this fail-

ure to exercise reasonable care to discover its dangerous character or condition."

It appears that the truck was five years old, had traveled 11,000 miles, that it had a valid State inspection sticker evidencing an inspection seven months earlier, that defendant's mechanic had inspected it 1,500 miles before the accident, that the truck had been operated within a week before the accident for at least 100 miles by defendant's mechanic, that prior users of the truck had not found any difficulty with the steering mechanism of the truck, that it was one of 50 or 60 vehicles for whose care the mechanic was responsible.

We rejected an offer on plaintiff's part to introduce an "expert" to testify that a dump truck was used mostly in summer, that it received rough treatment and that it was poor inspection practice to rely upon customers' complaints and to have only one mechanic for 50 or 60 vehicles.

We did not consider this to be the subject of expert testimony. An act cannot be branded as dangerous because some expert characterizes it as an unsafe practice: Sweeney v. Blue Anchor Beverage Co., 325 Pa. 216, 224.

The offer did not state what was the proper method to discover defects in the steering apparatus of motor vehicles or whether any such defect would have appeared had proper inspection taken place. See Desibia v. Monongahela Railway Company, 262 Pa. 227, 229; Miller v. Hickey, 363 Pa. 317, 325.

The criterion is not whether defendants' inspection system was poor but whether this specific truck received reasonable inspection. No matter for how many other vehicles the mechanic was responsible, he in fact drove this truck loaded with sand for many miles within a week of the rental to plaintiff. We doubt that, in the absence of complaints, any mechanic would go

beyond a road test to determine the condition of a steering apparatus.

What is of utmost importance in this case, however, is that there is no showing that this accident happened by reason of any defect of the vehicle, discoverable or undiscoverable, existing when the truck was delivered to plaintiff.

The safe use of this truck by plaintiff over the same course for five trips negatives any inference that the accident occurred by reason of any preexisting defect in the steering mechanism of the truck and plaintiff has not offered any evidence that would have permitted the jury so to find.

Although the truck was demolished, an examination of the wreckage might have revealed some preexisting weakness that defendant might have discovered by proper diligence.

Since plaintiff had already elicited from defendant and his mechanic testimony of defendant's care and inspection of the truck, the question of going ahead with evidence does not arise in this case.

We are of the opinion, therefore, that plaintiff has failed to show that his injuries occurred by reason of any act of omission or of commission on the part of defendant and has not shown any circumstances from which the jury had the right to infer any such act on defendant's part.

Having so found, we must enter judgment for defendant, notwithstanding the verdict. It would be futile, therefore, to consider the reasons for the motion for a new trial. Were we to consider that motion, we are strongly persuaded that the verdict is against the weight of the evidence.

Now, March 20, 1962, defendant's motion for judgment notwithstanding the verdict is granted, the verdict heretofore entered is set aside and judgment is entered for defendant and against plaintiff.