Turco Paint & Varnish Company *v.* Kalodner et al.

422

Argued January 7, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and BARNES, JJ.

*John P. Connelly,* with him *Earl V. Compton, Hugh P. Connelly* and *F. Gilman Spencer,* for plaintiff.

*Charles J. Margiotti,* Attorney General, with him *John Y. Scott,* Deputy Attorney General, for defendants.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 27, 1936:

· This case is here on original jurisdiction to restrain the operation of the act approved May 16, 1935, called the Corporate Net Income Tax Act. This so-called income tax was designed to levy a tax on business associations, foreign and domestic, for the privilege of doing business in the State. It was intended to reach corporations doing business wholly within the State and those doing business partly within and partly without the State. The amount of the tax to be collected is measured by 6% of the net earnings or profits gained within the State during the year by the corporation. The structure of the act was intended to provide an equitable and comprehensive system whereby the tax base could be fairly ascertained. It is on its face a lawful measure.

The tax is here assailed because, first, it violates section 1 of article IX of the Constitution: "All taxes shall be uniform upon the same class of subjects"; second, section 2 of article IX, and section 7 of article III, which prohibit laws exempting property from taxation; third, section 3 of article III forbidding laws containing more than one subject not clearly expressed in the title. It is also charged in connection with the first quoted section, and apart from it, that the legislative method employed in ascertaining the tax base is unworkable and, if it can be put into operation, unequal and unfair results will be produced which will cause the assessed tax to be illegal and unfair.

Section 3 of the act imposes a tax on every corporation for the privilege of doing business in the State at the yearly rate of 6% upon each dollar of net income. Where the corporation's entire business is transacted within this Commonwealth, net income is defined by section 1 of the act as that returned to the federal government, less federal tax. Where the corporation's business is not entirely transacted here, the tax is imposed on such portion of net income as is attributable to opera-

tions within Pennsylvania for the fiscal year. The determination of this income is through a method of apportionment calculated upon three factors, namely, tangible assets, gross receipts and payroll.[1] Other portions

---

[1] "Section 2. In case the entire business of any corporation is not transacted within this Commonwealth, the tax imposed by this act shall be based upon such portion of the net income of such corporation for the fiscal or calendar year, as defined in clause one hereof, as may be determined by allocations and apportionments made as follows:

"(a) Gains realized from the sale of capital assets, if such assets consist of real estate or tangible personal property situated in the Commonwealth, shall be allocated to this Commonwealth.

"(b) Gains realized from the sale of capital assets, if such assets consist of real estate or tangible personal property situated outside of the Commonwealth, shall not be allocated in any part of this Commonwealth.

"(c) The remainder of such net income shall be divided into three equal parts.

"(1) Of one-third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said one-third by a fraction, whose numerator is the value of the corporation's tangible property situated within this Commonwealth, and whose denominator is the value of all the corporation's tangible property wherever situated.

"(2) Of one-third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said one-third by a fraction whose numerator is the expenditure of the corporation for wages, salaries, commissions, and other compensation to its employees, and assignable to this Commonwealth as hereinafter provided, and whose denominator is the total expenditures of the corporation, for wages, salaries, commissions, and other compensation, to all its employees.

"(3) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the amount of the taxpayer's gross receipts from business assignable to this Commonwealth as hereinafter provided, and whose denominator is the amount of the taxpayer's gross receipts from all its business.

"In cases where only two of the foregoing three rules are applicable, the remainder of the net income of the corporation shall be divided into two equal parts only, each of which shall be appor-

of the act material to this discussion are quoted below.[2]

Plaintiff is a Delaware corporation which does only part of its business in Pennsylvania. It contends that, in effect, the act imposes a graded income tax and that

tioned in accordance with one of the remaining two rules. If only one of the three rules is applicable, the part of the net income received from business carried on within the Commonwealth shall be determined solely by that rule.

"The amount assignable to this Commonwealth of expenditures of the corporation for wages, salaries, commissions, or other compensation to its employees, shall be such expenditures for the taxable year as represent the wages, salaries, commissions, or other compensation of employees, not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the corporation outside the Commonwealth.

"The amount of the corporation's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from, (1) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from, premises for the transaction of business owned or rented by the taxpayer outside the Commonwealth, and sales otherwise determined to be attributable to the business conducted on such premises, and (2) rentals or royalties from property situated, or from the use of patents, within this Commonwealth. If a corporation maintains an office, warehouse, or other place of business in a state other than this Commonwealth for the purpose of reducing its tax under this subsection, the department shall, in determining the amount of its gross receipts from business assignable to this Commonwealth, include therein the gross receipts from sales attributed by the corporation to the business conducted at such place of business in another state.

"A rule shall not be deemed to be inapplicable merely because all the tangible property or the expenditures of a corporation for wages, salaries, commissions, or other compensation, or the gross receipts of the corporation are found to be situated, incurred, or received without the Commonwealth."

[2] "Section 13. Constitutional Construction.—The provisions of this act are severable, and if any of its provisions shall be held unconstitutional, the decision of the court shall not affect or impair any of the remaining provisions of this act. It is hereby declared to be the legislative intent that this act would have been adopted, had such unconstitutional provisions not been included herein."

the graduation of the tax follows from the process by which net income is determined; and that, if the tax is not graduated, the method of computing it or formula's operation is not uniform when applied to corporations differently situated as respects the three factors which enter into the calculation of the net income allocated to operations within this State.

Plaintiff has not pointed to a single provision of the act which would demonstrate a legislative intent to impose a graded income tax. The rate used, 6%, is the same for all corporations. The tax base to which this rate is to be applied is also identical. It is the net income attributable to this State. It certainly should be axiomatic that the same impost when applied to the same subject-matter does not make the tax graded simply because of the fact that one association, owning more of the particular taxable subject-matter than another, pays, on this account, a greater sum total of tax. Where *different* rates are legislatively imposed on varying amounts or quantities of the *same* tax base, then you have a graded tax that lacks uniformity under our Constitution. See Kelly v. Kalodner, 320 Pa. 180. To create a graded tax it is generally necessary that the rate itself be a variable factor even though the base may remain constant, or it may be that in particular cases such a tax may result because of intangible differentiations in subject-matter with the imposition of a different rate upon each of them. The impost which varies in levels of the tax base thus defined becomes graded and lacks uniformity under our Constitution. This is not a graduated income tax.

The charge is then made that the method employed by the legislature is unworkable and that in its operation it will produce arbitrary and unjust results, rendering it discriminatory, illegal and violative of the constitutional provision relating to uniformity. This argument is addressed chiefly to that portion of the act which sets forth the method or formula for ascertaining the net income

arising in this State where the corporation does business both within and without the State. The formula in this act is a careful and equitable valuation of the various elements which contribute to and produce income. In the introduction of three factors—gross receipts, tangible assets and payroll—each essential which bears a direct relation to profits and income seems to have been considered. It is a matter of common knowledge that, depending upon the type of activity concerned, different corporations employ more or less of capital or labor. Thus certain corporations may have a large force of laborers or wage earners with consequently heavy payrolls but possibly little capital investment. Then there are corporations whose activities demand a heavy capital investment for operation but a small number of wage earners. Both these factors must be considered in the tax base, otherwise certain associations would be relieved of their proper share of the tax burden of the State. That the third factor is essential needs no discussion. That all three are important is shown by reported cases in this and other states and in the federal courts. The net result is that no association engaged in doing business within this State will escape the tax.

The operation of the apportionment method for arriving at net income from business conducted within the State is, by the introduction of these three factors, made to operate, in all normal and usual cases, in a fair and equitable manner.

Apportionments through formulas have been recognized in this State and in the United States. They were approved by this court in Com. v. Union Shipbuilding Co., 271 Pa. 403; Com. v. Standard Oil Co., 101 Pa. 119; Com. v. Hazelwood S. & T. Co., 271 Pa. 375; see also Com. v. P. R. R. Co., 297 Pa. 308; Com. v. Mortgage Trust Co., 227 Pa. 163; Com. v. Stegmaier Brewing Co., 309 Pa. 52. The legislature, by the Act of June 28, 1923, P. L. 876, imposed an emergency profits tax on net income of certain corporations. The structure of that act

was almost identical with the present one, the main difference being that it taxed income as such, while the present act imposes a tax on a privilege measured by net income. The Act of 1923 was before this court in Com. v. Chambersburg Engineering Co., 287 Pa. 54; Com. v. J. G. Brill Co., 287 Pa. 59. While the constitutionality of that act or of the formula contained therein were not under attack in these cases, it is fair to assume that had there been any constitutional objections such as are here being considered, they would have been raised and the court would have passed on them.

Apportionments through formulas have been considered and approved by the Supreme Court of the United States in calculating taxable property within a state's borders. See State Railroad Tax Cases, 92 U. S. 575; Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18; Maine v. Grand Trunk Ry., 142 U. S. 217; Western Union Telegraph Co. v. Taggart, 163 U. S. 1; Pgh., etc., Ry. v. Backus, 154 U. S. 421. That court and state courts have also considered cases wherein taxes on the privilege of doing business or "excise" taxes were measured by a proportion of net income; the proportions were arrived at by a consideration of either the property invested in the State as compared to all the property of the company, or by gross receipts within the State as compared with entire gross receipts. See Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113; Bass, Ratcliff & Gretton, Ltd., v. State Tax Commission, 266 U. S. 271; Slater Mills, Inc., v. Gilpatric, 97 Conn. 521; International Elevator Co. v. Thorensen, 58 N. D. 776.

In National Leather Co. v. Com. of Mass., 277 U. S. 413, 423, the court stated: "It is settled law that a state may lawfully impose upon a foreign corporation a tax for the privilege of doing business within its borders which is measured by the proportionate part of its total net income which is attributable to the business carried on within the state."

The formula here employed seems to have originated in Massachusetts, where it has been in constant use, with certain amendments, since 1919. The Massachusetts Act has been before the Supreme Court on at least three different occasions: Macallen Co. v. Massachusetts, 279 U. S. 620; National Leather Co. v. Com. of Mass., supra; Alpha Portland Cement Co. v. Com. of Mass., 268 U. S. 203. In none of these cases did the court consider the method of appraising the tax impractical. Through many years and in varying situations, taxing authorities in many jurisdictions have used formulas for apportionment where the tax basis concerned corporations doing part of their business within and part without the State. It is not now open to question that a state has authority to levy a tax on the privilege of doing business measured by income accumulated within the state and that, as to corporations doing business within and without the state, the tax may be found by apportionment through a formula, such as here adopted, where its general effect produces uniformity of operation by using all the elements entering into the production of net income. The act in all these respects is structurally sound.

We are of opinion that the act is workable, but does it in particular cases produce unfair and illegal results? Taxation is not a matter of exact science (Phila. & Reading Coal & Iron Co. v. Northumberland Co. Commrs., 229 Pa. 460, 471; Com. v. Phila. & Reading Coal & Iron Co., 278 Pa. 338, affirmed 266 U. S. 588), and acts will not be condemned merely because some inequalities are brought about: Com. v. Delaware Div. Canal Co., 123 Pa. 594, 620; Fox's App., 112 Pa. 337; Com. v. Merchants & Mfrs. Nat. Bank, 168 Pa. 309. Illegal results have occurred in cases arising under tax apportionment acts. See Hans Rees' Sons Co. v. North Carolina, 283 U. S. 123; Kent-Coffey Mfg. Co. v. Maxwell, 291 U. S. 642; Alpha Portland Cement Co. v. Mass., supra. So it must be conceded that in some instances the working out of the formula will produce unfair and illegal re-

sults. But in every case in which the broad problem of constitutionality of similar statutes was raised and upheld, the court stated specifically that so long as there is an avenue open to the taxpayer to remedy any abuse which may arise, no sweeping assertion of unconstitutionality in every instance can be heard. This is in strict accord with the principle that the party who alleges unconstitutionality must show the facts which renders its application unconstitutional. Here no such facts have been presented.

The method or formula stands as the prima facie method of determining the net income. If, in particular cases, its operation will work an injustice or achieve an arbitrary result so far out of line with the actual facts as to cause it to be illegal (see Hans Rees' Sons Co. v. North Carolina, supra), or if, in its application, it touches upon particular corporations, which, because of their paramount federal interest, have been held to be immune from burdensome state taxation (see Alpha Portland Cement Co. v. Mass., supra), then will be the time to consider such charges.

Does the act provide a remedy whereby the taxable may be relieved of unfair or illegal assessments? Viewing the act as a whole it is beyond question that the legislature has provided a full and complete, remedy whereby a taxable, aggrieved by a tax assessment, may have his cause heard, and where it may be determined whether the tax is "justly or legally due." First, through a petition for resettlement, second, an appeal to the Board of Finance, and, third, an appeal to the Dauphin County Court where the appeal may be heard de novo. Section 4 (c) provides for a petition for resettlement, a petition for review and an appeal to court whenever it is claimed that payment of the tax or any part thereof is not "justly or legally due."[3] This appeal is taken,

---

[3] Section 4(c). "The amount of all taxes, imposed under the provisions of this act, not paid on or before the time as above pro-

as set forth in article XI, section 1104 of the Fiscal Code of 1929, to the Dauphin County Court, as is usual in appeals from assessments of tax by state administrative authorities.  By that section the Dauphin County Court is authorized to make hearings de novo, and from its decision an appeal may be taken to either this court or to the Superior Court as in other cases.  The taxpayer must pursue this remedy before the court may consider the charge of illegality as to him: Gorham Mfg. Co. v. State Tax Commrs., 266 U. S. 265.  Had the act provided no such remedy, our courts, under our Constitution, could exercise their independent judgment to determine whether property was being unlawfully taken from him.  The main purpose of the act being lawful and the act in its form not offending the Constitution, if property is taken illegally, an appeal may be properly taken to the courts and the facts shown which cause its operation to become illegal.

Plaintiff also contends that the act, in excluding from its operation building and loan associations, banks, trust

---

vided, shall bear interest at the rate of twelve per centum per annum from the date they are due and payable until paid, except that any taxes found due as the result of an appeal to the court of common pleas or any appellate court, shall bear interest at the rate of six per centum per annum from the date such taxes are due and payable until paid: Provided, however, That any corporation may pay the full amount of such tax, or any part thereof, together with interest due to the date of payment, without prejudice to its right to present and prosecute a petition for resettlement; a petition for review, or an appeal to court, if such payment is accompanied by a protest that the whole or any part of such payment is not justly or legally due.  If it be thereafter determined that such taxes were overpaid, the department shall enter a credit to the account of such corporation, which may be used by it or assigned to any other person or corporation for use in the payment of any obligation to the Commonwealth."

In addition to this section the right of appeal to the courts is given also by sections 7 and 8 of the act in any case where a party deems himself aggrieved by a reassessment of a tax due by the Department or the Board of Finance and Revenue.

companies, insurance companies and the like, violates the provision of our Constitution forbidding exemption of property from taxation. It also claims for the same reason that the tax is not uniformly applied to the same class of taxables. Article IX, section 1, relative to uniformity, does not prohibit classification for taxation purposes (Heisler v. Thomas Collieries Co., 274 Pa. 448, 463), and classification does not always lead to an exemption within the meaning of article III, section 7, and article IX, section 2: see Com. v. Germania Brewing Co., 145 Pa. 83, 84. An exemption contemplated by article III, section 7, and article IX, section 2, is an exemption from all taxation in any form.

In sustaining the power to classify, this court said in Com. v. Edgerton Coal Co., 164 Pa. 284, 304, that it is settled "that the legislature can, without making the revenue statute obnoxious to the Constitution, classify corporations for the purpose of taxation; may sever a small class from a larger one; might subject one class to taxation and leave others untaxed." The test of classification is "whether it produces diversity in results or lack of uniformity in its operation, either on the given subject of tax or the persons affected as payers. . . . Classification cannot be made arbitrarily. . . . It must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . . Nor may any question be raised concerning the right of the Commonwealth to classify properties and their owners for the purpose of taxation": Schoyer v. Comet Oil & Refining Co., 284 Pa. 189, 197.

Mr. Justice Roberts stated in State Board v. Jackson, 283 U. S. 527, 539: "A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations, which may be subjected to special forms of regulation or taxation through an excise or license tax. If

the selection is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

We have sustained for purposes of taxation the classification of corporations manufacturing beer from all other manufacturing corporations (Com. v. Germania Brewing Co., supra), and we held the distinction made between them a reasonable one. Classification has been upheld between anthracite coal and bituminous coal (Heisler v. Thomas Collieries Co., supra, affirmed 260 U. S. 237); stock insurance companies and mutual insurance companies (Com. v. Girard Life Ins. Co., 305 Pa. 558); corporate owners of taxicabs and individual owners (Com. v. Quaker City Cab Co., 287 Pa. 161, reversed on another point in Quaker City Cab Co. v. Pa., 277 U. S. 389); foreign insurance companies and domestic insurance companies (Germania Life Ins. Co. v. Com., 85 Pa. 513); money owed by individuals and money owed by corporations (Fox's App., 112 Pa. 337); stock in trust companies and stock in other associations (Com. v. Mortgage Trust Co., 227 Pa. 163, 177); and in many other situations.

In the separation for tax purposes of a certain kind of corporation from all other corporations or associations we held that either the subject-matter or the corporate activity were sufficiently unique to put the taxed corporation into a separate class, and that it was of such dissimilarity from others in a larger class into which it generally was placed that in taxing it, without taxing the others, no discrimination was made. In these cases we separated some companies from the general mass for the purpose of taxation. Here the general mass (corporations) are named for taxation and the specific companies that could be separately taxed are exempted.

The method of legislative approach is not material; the question is whether there is any reason for exempting them from this particular tax. The corporations here excluded bear sufficient distinction in themselves to set them apart as a class and, if they may be held to be sufficiently distinctive for the purposes of levying a tax, they must also be held sufficiently distinctive for the purpose of excluding them from the larger class when the latter is subjected to tax. Classification under the Constitution is necessarily elastic; the use in this statute of the generic term "corporations" does not estop the legislature from delimiting this class by excluding certain types of associations. It cannot be seriously questioned that had the legislature chosen to enumerate particular classes of corporations, such as manufacturing corporations, transportation corporations, etc., and subjected them to the tax here in question, this would be upheld notwithstanding that the list did not embrace banks, insurance companies and the like. As we view it, the legislature has here employed the term "corporations" to cover all classes except those which they have specifically excluded.

In Com. v. Germania Brewing Co., supra, the act under discussion made a class of all corporations except foreign insurance companies and banks and savings institutions. The opinion of Judge McPherson, adopted by this court in a Per Curiam opinion, stated at page 84, with respect to this classification, "we know of no constitutional objection thereto." In Com. v. Provident Trust Co., 287 Pa. 251, the Emergency Profits Tax there under consideration similarly levied a tax on all corporations and it exempted building and loans and corporations required to pay a gross premiums tax (insurance companies). This court stated at page 258: "The whole scheme and purpose was to treat all corporations alike except those which for some special reason were required to pay more taxes than they should, or where

their revenues were not of a nature that they could rightfully be termed income."

The revenues and essential characteristics of these corporations are peculiar to them. For instance, the revenues of insurance companies can hardly be termed "income" within the meaning of the act. Their income (premiums) is in great measure required by law to be set aside as a reserve, and is not unconditionally available to its members. Moreover, insurance companies are subject to a gross premiums tax. Building and loans, and the other so-called exempt associations, are subject to their special forms of taxation. No doubt the legislature, in the exercise of its discretion, deemed all of them sufficiently affected with a public interest to merit their exclusion from what might otherwise be a burdensome tax.

However this may be, even if we did consider the exemption discriminatory to appellant, or to any other corporate body in any future case, the net result would not be to strike down this entire act. Section 13 declares that the provisions of the act are severable and that the unconstitutionality of any of its provisions shall not affect others. It further states, "It is hereby declared to be the legislative intent that this act would have been adopted, had such unconstitutional provisions not been included herein." If, therefore, the provision relating to exemption should be held unconstitutional, the result would be that the act would have to be read as if this provision were not contained therein, and the nontaxables would then become part of the taxable class. This follows not alone from the provisions of the act but from what we have previously stated when confronted with a similar constitutional objection: see Com. v. Germania Brewing Co., supra, at page 85; Bagley Co. v. Cameron, 282 Pa. 84. The appellant not having shown at this time, that there is any discrimination as respects it, and as the question of proper exclusion may later

come before us, we here hold that the provision exempting these companies from the operation of the act does not violate any of its rights and is not, therefore, unconstitutional. For it is a well-recognized rule that a court will never heed objections to the constitutionality of an act of assembly unless the complainant is affected by the particular feature alleged to be in conflict with the Constitution: Mesta Machine Co. v. Dunbar F. Co., 250 Pa. 472; Plymouth Coal Co. v. Com. of Pa., 232 U. S. 531; Smith v. McCarthy, 56 Pa. 359, 362.

With respect to the objection that the title of the act does not specify the types of corporations which are exempt from its provisions, the title gives sufficient notice as to the subject-matter and is bound to put anyone reading it upon inquiry. In other statutes the word "certain" has been held adequate: McGuire v. Phila., 245 Pa. 307; Com. v. Snyder, 279 Pa. 234. The title of an act is not required to be a complete index of its contents: Com. v. Green, 58 Pa. 226.

Some question has also been raised regarding the regularity of the provision which requires that a party pay part or all of the tax before contesting the legality of its assessment.[4] This is a usual provision in tax statutes and must necessarily be so, otherwise governmental operations might be seriously handicapped through lack of revenue due to unjustified actions of recalcitrant taxpayers. While the act states that taxes found to be overpaid shall be entered to the taxpayer's credit and that this credit may be assigned in payment of any obligation of the Commonwealth, this is merely an administrative method outlined for the guidance of the Department of Revenue, and is not the sole method of repayment. The corporation entitled to the credit may receive its worth in cash.

Bill dismissed; costs to be paid by plaintiff.

---

[4] See section 4(c) quoted in footnote 3, supra.