# Archbold v. Codorus Township School District

*Gerald E. Ruth,* for appellants.
*Jeffrey C. Bortner,* for appellee.

SHADLE, J., December 31, 1963.—This is an appeal by 25 taxpayers from the adoption of an occupation tax resolution by appellee school district. Both the resolution and appeal are pursuant to the so-called Tax Anything Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851, et seq.

The tax resolution was adopted by appellee on May 13, 1963, to become effective the first Monday in July, 1963. The tax was levied upon the occupations of "all persons physically residing within the said School District." Under the resolution the tax was to be based upon "the occupational assessment of said taxables as determined by the York County occupation assessment list for Codorus Township, but the School Board of Codorus Township may correct erroneous valuations on such list and include persons and valuations omitted from such list."

Appellants' petition for appeal contains the following:

"1. . . . [the named appellants] are adult individual taxpayers residing in Codorus Township . . .

"3. The petitioners contend that the tax ordinance is invalid because: (a) Classifications of taxpayers are not uniform but are capricious, inaccurate, and arbitrary; and thus violate the Pennsylvania Constitution. (b) A school district may not levy both a per capita tax and an occupation tax."

Appellee filed both a responsive answer to the petition and what is called a "motion for judgment on the pleadings." With the concurrence of counsel, testimony was taken by both sides at a hearing, without prejudice to appellee's motion, and a ruling thereon was deferred. Argument was thereafter had both on the motion for judgment and on the merits of the appeal. Without deciding whether a motion for judgment on the pleadings is proper in this proceeding, we shall treat it as a motion to dismiss the appeal.

Appellee alleges the following grounds for its motion: (1) The petition fails to allege that appellants are taxpayers of the school district; (2) the bond accompanying the petition was signed by only two of the 25 appellants as principals and contained no surety; (3) the petition fails to set forth the facts in support of the objections to the tax; (4) the petition fails to allege what portion of the Pennsylvania Constitution is violated.

Section 3 of the Act of 1947, supra, as amended, 53 PS §6853, establishes the following requirements and procedure on appeal:

". . . taxpayers representing 25% or more of the total valuation of real estate in the political subdivision as assessed for taxation purposes, or *taxpayers of the political subdivision* not less than 25 in number *aggrieved by the ordinance or resolution* shall have the right to appeal therefrom . . . upon giving *bond with sufficient security* in the amount of five hundred dollars ($500), approved by the court, to prosecute the appeal with effect and for the payment of costs. The petition shall set forth the objections to the tax *and the facts in support of such objections* . . ." (Italics supplied.)

We believe the quoted portions of the act easily dispose of the second and fourth of appellee's objections. The bond was in the required amount, but was signed by only two of the 25 appellants, who are stated therein to be husband and wife. Counsel for appellants has represented, and it has not been disputed, that the obligors own real estate of a value substantially in excess of the amount of the bond. There is nothing in the act even inferring that all appellants must sign the bond, nor any requirement that there be any surety thereon. All that is required is that the bond furnish "sufficient security" that appellants will prosecute the appeal and pay any costs. If appellee was dissatisfied with the security furnished by the obligors' bond, it could have suggested this fact to the court and requested additional

security by way of a surety or additional obligors. Not having done so, we find nothing in the form of the bond to warrant dismissing the appeal.

As to the objection that offended portion of the Pennsylvania Constitution is not cited, it is necessary to say only that we know of no law, and appellee has referred to none, requiring this, and that the complaint of lack of uniformity obviously is based on article IX, sec. 1, providing that "All taxes shall be uniform, upon the same class of subjects . . ."

The question of appellants' status as taxpayers entitled to maintain the appeal presents more difficulty. Appellee objects that not only did appellants fail to allege that they are taxpayers of the school district aggrieved by the resolution, but they failed to prove it as to all 25 appellants, this being the minimum number required to maintain the appeal. Under the resolution, appellants became liable for the tax if they physically resided in the school district. We believe a reasonable interpretation of the term "aggrieved taxpayer" is one who is liable for, or required to pay, the tax, regardless of whether he actually has made any such payment.

The question remains whether appellants sufficiently alleged and proved that they were all residents of the school district. The petition states only that appellants are "taxpayers" residing in Codorus Township, which is a different political subdivision and legal entity than Codorus Township School District which imposed the tax in question, and the word "taxpayers" in this context does not necessarily mean persons liable for this particular tax. Shelter might be found from this deficiency in section 201 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §2-201, which provides that each township shall constitute a separate school district. It might thus be argued that the court should take judicial notice that residents of Codorus Township likewise reside in Codorus Township

School District. Such a contention falls, however, in the light of sections 226 to 232, inclusive, of the code, authorizing, but not requiring, a change in school district boundary lines following municipal annexations, and sections 241 to 243, inclusive, of the code, authorizing the creation of independent school districts within municipalities. Thus, it is entirely possible for persons living within the township to live outside the boundaries of the school district, and the court certainly cannot judicially notice whether any such boundary line modifications have taken place.

Even more critical is appellants' failure to prove that all of the required 25 appellants are aggrieved taxpayers, a fact which not only was controverted by appellee's answer to the petition, but which we consider to be a jurisdictional requirement to maintain the appeal. The testimony discloses that only four of the 25 appellants reside in Codorus Township School District. Two other appellants identified their residences only by post office addresses, and there was no testimony whatever as to the residences of the remaining 19 appellants.

Appellee's third objection, that the petition fails to set forth the facts in support of the objections to the tax, likewise appears to be well founded. There is no question that the act categorically requires such factual allegation in addition to a statement of the objections raised. Appellants have stated the constitutional objection of lack of uniformity, and whatever inference may be drawn from the legal conclusion that "A school district may not levy both a per capita tax and an occupation tax". However, they have failed to state a single fact showing even that appellee does actually levy both types of taxes, much less any fact demonstrating what it is about the classification of taxpayers which is nonuniform, capricious, inaccurate and arbitrary. Had the legislature intended to eliminate the necessity for factual pleading now required in most other proceedings,

it certainly would not have required a statement of "the facts in support of such obligations".

In Appeal of Illoshway, 40 Wash. Co. 173 (1960), preliminary objections were sustained and a similar appeal was dismissed for failure to "strictly pursue" the procedure provided by the act, on the familiar theory that statutory remedies specially provided must be closely followed. The opinion does not disclose the nature of the procedural defect there involved, and, of course, that decision is not binding upon us. Nevertheless, it seems only reasonable to us that if as few as 25 persons are to be authorized to delay and litigate a tax imposed on over 1,300 taxpayers for the benefit of an entire school system serving an uncounted number of children, the very least to be required of them is a strict and literal compliance with the procedure outlined by the legislature. This entire problem could have been avoided by a simple and concise allegation in the petition of the facts supporting the objections to the tax, and an equally simple and concise statement by one witness knowing the facts, that all 25 of appellants were on the date the resolution was adopted residents of Codorus Township School District. Our conclusion is fortified by the philosophy expressed in the concluding portion of section 3 of the Act of 1947, supra, which provides that: "It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax".

We have a reluctance, however, to finally disposing of the appeal on purely procedural grounds and have, therefore, considered the merits of appellants' objections to the tax. These are three in number: (1) The assessment procedure is capricious, inaccurate and ar-

bitrary and, therefore, lacks uniformity; (2) appellee has no authority to impose the occupation tax because it also imposes a per capita tax; and (3) the revenue to be derived from the tax exceeds the limit imposed by the Act of 1947, supra. This latter point was not raised in the petition for appeal, was first asserted at argument and appellee properly objects to its consideration.

To understand the first objection, it is necessary to review the system of assessment and taxation of occupations in York County. Each year the County Board of Assessment and Revision of Taxes, through the chief county assessor, sends to each local assessor what it calls its precept, in which the local assessors are directed to "assess all Occupations of residents . . . within their districts . . . as follows . . ." There then are listed 28 classifications of occupations, ranging alphabetically from "aldermen" to "tenant farmers," each assigned an assessment dollar value of from $10 for "invalids" to $500 for "attorneys-at-law." The list is followed by the following instructions:

"Any occupation not enumerated above shall be rated as similar or belonging to some one of the listed classes. An occupation to be listed and valued for tax purposes shall be that occupation from which the taxable derives the majority of his or her livelihood. Any new occupation taxable that you wish to add is to be listed and forwarded to the Chief Assessor".

It is difficult to describe with precision the process actually used by the local assessors and chief county assessor thereafter. As we understood the testimony of the township assessor, he labels and values occupations of residents by one of two methods: (a) Comparing the work in question with that involved in the occupations and values on the list and then attaching to the occupation in question the label and value to which it seems most similar, or (b) devising a new label for the work in question, and assigning to it an assessed value which

appears on the list for an occupation to which it seems most similar. This information he transmits to the chief county assessor.

As we understood the testimony of the chief county assessor, he then does one or more of the following things in entering the assessment on the official records: (a) Accepts the occupation label and value as submitted; (b) accepts one of the listed occupations at a value higher or lower than that appearing on the list, unless it is so much higher or lower than the listed value as to cause him to question it; (c) refuses to accept any assessed value for any occupation, listed or unlisted, which is not the same as one of the values appearing on the list, i.e., $10, $50, $75, $100, $150, $200, $300 or $500. We must confess that both during the hearing and after reflection upon the record, both the logic and reason for such action, as well as the standards and criteria by which such action is taken, are utterly incomprehensible to us.

We understand appellants to raise two objections to this process: (1) The local assessor by adding new classifications and values not on the list is exceeding his authority in actually making an assessment which only the chief assessor has authority to make, and which the latter accepts without question, and (2) in thus deviating from the list, the local assessor in assigning values considers certain valuation factors which are not considered for the listed occupations, and the resulting total assessment list therefore is arbitrary, capricious and not uniform.

It should first be pointed out that, according to the record, the chief assessor does not always accept local assessments without question, but frequently questions some of them, and asserts the right to do so as to all of them. In any event, these contentions were considered and passed upon by us in Miller v. York Imperial School

District, 23 D. & C. 2d 406 (1960), and what we said there is applicable here:

"The contention is that . . . the fact that different valuations were assigned the same occupation and new categories were added, indicates that the chief assessor made no assessment, and delegated this duty to the local assessors.

"Section 201, as amended, 72 PS §5453.201, of the general assessment law, supra, [Act of May 21, 1943, P. L. 571, sec. 201, as amended] requires occupations to be valued and assessed. Section 506, as amended, 72 PS §5453.506, makes it the duty of each local assessor 'to gather and report to the chief assessor all data and information necessary to assess . . . in accordance with . . . all lawful regulations prescribed by the board (for the assessment and revision of taxes).' Section 302, as amended, 72 PS §5453.302, authorizes and directs the board to 'adopt rules and regulations . . . which shall govern the . . . local elected assessors . . .' Section 601, as amended, 72 PS §5453.601, then states that '. . . the chief assessor shall, from the returns made by the local assessors, prepare and submit to the board . . . an assessment roll . . . together with the value placed upon . . .' each subject of local taxation. Finally, section 602, as amended, 72 PS §5453.602, categorically makes it the '. . . duty of the chief assessor to assess, rate and value all subjects and objects of local taxation . . .'

"The written instructions given by the chief assessor to the local assessors on assessment of occupations apparently were rules and regulations issued in accordance with section 302. These instructions obviously were that where the local assessors found residents to have one of the occupations listed, they were to report that fact to the chief assessor together with the appropriate valuation listed in the table . . .

"On the other hand, the act of the chief county assessor in entering the assessments and valuations in the local tax duplicates can be construed in no other way than as the making of the assessments in accordance with the mandate of the act . . .

"Neither is the addition of new classifications to the chief assessor's list any indication that the act of assessment was performed by the local officials rather than the chief assessor. The reporting of such additional occupations was in accordance with the written instructions that 'any occupation not enumerated . . . shall be rated as similar . . . to some one of the listed classes.' The adoption and listing of such new classes by the chief assessor constituted an assessment by him no less than if they had been included in the original list."

Much testimony was taken by appellants tending tó show that the occupations of certain taxpayers were not described by the proper label, or that in the case of some taxpayers doing several types of work, one occupation rather than another should have been listed. What we said in Miller v. York Imperial School District, supra, likewise is applicable on these points:

"It is to be noted that there is no question here as to the method of assessment and taxation provided by the resolution . . .

"The objections of plaintiffs are really aimed at the alleged improper manner in which the lawfully authorized assessment process was carried out.

" 'A distinction has been taken between the cases in which over-assessment or inadequate exemption has been alleged and the cases in which the property owner denies the power to levy any tax. In the former, it has been held that the remedy is by appeal from the assessment, as the statute provides, and not in equity; in the latter equity affords the remedy . . . That this is not a case of denial by a property owner of the power to

levy any tax is apparent. Here the plaintiff contends that the method of assessment is unconstitutional and disregards the statutes granting the power to assess . . . their remedy is by appeal from the assessment': Bradford Twp. Assn. v. McKean County Bd., 370 Pa. 468, 470 (1952). . .

"Accordingly, we hold that, although certain of plaintiffs' occupations were improperly valued, this fact furnishes no basis for declaring the tax resolution unconstitutional nor for enjoining its enforcement."

It is true that both the Miller case and the Bradford case cited therein were dealing with the propriety of an action in equity to invalidate the tax, whereas we are here dealing with an appeal from the enactment of the tax resolution. Nevertheless, a declaration of unconstitutionality of the tax was the ultimate relief sought in all instances, and both the cited cases indicate that under facts such as those here involved, only an appeal from the assessment is the proper remedy.

We further pointed out in the Miller case, supra:

"An act will not be declared unconstitutional on the ground that, in some cases, unfair and illegal results will be brought about, where a remedy is provided by which the taxpayer may be relieved from the injustice or illegality, and a taxpayer must pursue the remedy granted him by the statute before he will be heard to complain that it is unconstitutional in its application to him: Turco Paint and Varnish Co. v. Kalodner, 320 Pa. 421 (1936).

"The situation here is no different from one in which a real estate owner objects to the assessment of his property because his neighbor's property, which is in all respects identical, has been assigned a lower value. In such case there is no question but that the aggrieved taxpayer's remedy is by way of appeal from his assessment. Should his appeal be denied in the first instance,

he then has recourse to the courts, and may *in that proceeding* raise the constitutional problem of uniformity as to his particular assessment."

To these observations may be added the recent emphatic pronouncements by the Supreme Court of the rules governing consideration of charges of unconstitutionality against legislation. " 'It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so . . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them. . . . An act may not be declared unconstitutional unless "it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation in our minds" . . .' ": Sablosky v. Messner, 372 Pa. 47, 58 (1952). To the same effect, see Daly v. Hemphill, 411 Pa. 263 (1963). See also Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, wherein it is said that "The heavy burden resting upon the person asserting unconstitutionality of legislation is one of the most firmly established principles of our law," and that "The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances whether they be enacted by the council of a city, town or borough or by the supervisors of a township".

We conclude that appellants have failed to establish that the assessment process for the occupation tax is so invalid as to require a declaration that the tax resolution is unconstitutional. Our personal opinion is that the local occupation tax as presently administered is archaic, outmoded, inefficient, inequitable, illogical, and incapable of meeting modern standards of municipal taxation. However, these are problems to be considered by the legislature which continues to authorize it, and by the municipalities which continue to use it. They are

not legal reasons for the courts to declare such taxes invalid.

Appellants base their second objection, that the levy of a per capita tax by appellee prevents it from adopting an occupation tax, solely on the case of North Sewickley Township School Dist. v. Smith, 38 D. & C. 242 (1940). An examination of that opinion reveals only the following on the point in question:

"Quite a number of years ago in a case, title of which we do not recall, and in which we seem to have made only an order without an opinion, we held that under the legislation in question a school district could not levy a per capita tax and also a tax on the occupation of the taxable, we being of the opinion that the occupation tax was in the nature of a personal tax and that to levy both would be a duplication. This is the effect of the decision of the Superior Court in the case of Phillips v. Barnhart, 27 Pa. Superior Ct. 26."

We decline to adopt the position represented by the quotation for the following reasons: The case is not binding upon us; the statement is dictum, since the occupation tax was held valid in the absence of proof that a per capita tax also existed; the decision was made seven years before the present act authorizing occupation taxes was adopted; the Phillips case cited therein was decided under the Act of July 22, 1897, P. L. 305, which specifically authorized per capita taxes only in lieu of occupation taxes, and which Act was repealed by the Act of May 18, 1911, P. L. 309; the present Public School Code of 1949 expressly authorizes a per capita tax by school districts and the Act of 1947, supra, expressly authorizes both per capita and occupation taxes by school districts; and we know of no decision, statute or legal reason prohibiting the adoption of both such taxes.

We agree with appellee that appellants' third objection, that the tax revenue will exceed the statutory

limit, is not properly before us, since it was not raised in the petition for appeal. Even if we were to consider it, it clearly is without merit. Section 1 (c) of the Act of 1947, supra, as amended, places a limit upon "The aggregate amount of all taxes imposed by any political subdivision *under this section* . . ." (Italics supplied.)

Appellants claim that there must be included in such aggregate the real estate taxes imposed by school districts, and when this is done the occupation tax revenue will exceed the limit. This obviously is incorrect, since the taxes to be considered in computing the limit are only those imposed "under this section" of the Act of 1947, supra, and school district real estate taxes are imposed only under section 672 of the Public School Code of 1949. When real estate taxes are excluded, the occupation tax clearly is within the permissible limit.

*Order*

And now, to wit, December 31, 1963, at 10 a.m., appellants' appeal is dismissed, the costs to be paid by appellants. An exception is noted on their behalf.

This opinion and order are filed on behalf of the court en banc.