# Commonwealth v. Century Industries Co., Inc.

*Vincent X. Yakowicz*, Deputy Attorney General, for Commonwealth.

*John G. Williams*, for appellant.

BOWMAN, J., June 15, 1965. — In this appeal by Century Industries Co., Inc., appellant, from action of the Board of Finance and Revenue in sustaining the Commonwealth's settlement of appellant's corporate net income tax for the calendar year 1955, the issue is whether an assignment of a leasehold interest is a sale of tangible personal property within the meaning of a taxing statute which excludes from taxation gains realized from the sale of capital assets if they consist of tangible personal property situate outside of the Commonwealth.

The matter is before us upon a waiver of jury trial, pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688, and a stipulation of facts from which we make the following

FINDINGS OF FACT

1. Appellant is a corporation duly organized and existing under the laws of the State of New York with its principal offices in New York City, and was authorized to do business in Pennsylvania.

2. Appellant timely filed its corporate net income tax return for the calendar year 1955 with the Pennsylvania Department of Revenue. The return indicated that income in the amount of $12,543.68 was subject to the allocation fractions.

3. Settlement of the 1955 corporate net income tax account was made by the Department of Revenue and approved by the Department of the Auditor General. The settlement reflected that income in the amount of $203,234.52 was subject to the allocation fractions.

4. The difference between the income to be allocated according to the return filed and the income to be allocated as reflected on the settlement made by the Department of Revenue is attributed to a capital gain realized by appellant in the amount of $190,690.84 on the sale and assignment of a leasehold interest in New York City and certain personal property located in the State of New York.

5. The gain on the sale was subsequently adjusted by the Internal Revenue Service to $241,690.84.

6. Appellant timely filed a report of change with the Pennsylvania Department of Revenue which report reflected the adjustments resulting from the Federal income tax examination.

7. Appellant continuously occupied as lessee three complete floors in a building located at 1071 Avenue of the Americas, New York, N. Y., for the period from July 1, 1940, through April 27, 1955.

8. During this period appellant, as lessee, executed various leases with respect to the property located at 1071 Avenue of the Americas, New York, N. Y., the last of such lease agreements was one dated January

12, 1953, and executed between appellant, as lessee, and Ten-Seventy-One Joint Venture, as lessor, for the term commencing February 1, 1953, and ending December 31, 1961.

9. The agreement between Ten-Seventy-One Joint Venture and appellant, dated January 12, 1953, was negotiated, prepared and executed in the State of New York.

10. On April 28, 1955, appellant entered into an agreement with the Union Dime Savings Bank, a New York banking corporation, which agreement provided for the assignment of appellant's right, title and interest in the lease dated January 12, 1953, to the said Union Dime Savings Bank for the sum of $200,000.

11. On the same date, appellant also sold and assigned to Union Dime Savings Bank certain furniture, fixture and leasehold improvements located on the leased premises for $50,000, which after allowing for depreciation produced a net gain of $41,690.84.[1]

12. During the period of its occupancy, appellant had made certain leasehold improvements in the leased premises at an original cost of $90,131.80, and with a depreciated book value at the time of the sale of $1,159.18, which sum is included in the net gain computation under FF11.

13. Appellant has timely pursued and exhausted its administrative remedies in contesting the tax settlement made by the Commonwealth. This appeal followed.

### DISCUSSION

The issue involved as stated, briefed and argued by appellant is whether a leasehold interest is "tangible personal property within the meaning of section 2(b)

---

[1] It is now stipulated by the parties that this net gain is excludable from the multiplicand and not subject to the tax even though it is presently included within the taxable income subject to allocation in appellant's tax liability as settled by the Commonwealth.

of the Corporate Net Income Tax Law so that the gain from the sale of a leasehold located in the State of New York is not to be allocated in any part to the Commonwealth for purposes of the Corporate Net Income Tax Law."

Commonwealth in its brief and argument also confined itself to the issue of the tangible or intangible nature of the leasehold interest in question.

Section 2 of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as reenacted and amended, 72 PS §3420b, as applicable to the tax year 1955, provides, in pertinent part, as follows:

"Section 2. Definitions—The following words, terms and phrases, when used in this act, shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning.

" 'Net Income' . . .

"2. In case the entire business of any corporation . . . is not transacted within this Commonwealth, the tax imposed by this act shall be based upon such portion of the net income of such corporation . . . , as defined in clause one hereof,[2] as may be determined by allocations and apportionments made as follows: . . .

"(b) Gains realized and losses sustained from the sale or exchange of *capital assets, if such assets consist of* real estate or *tangible personal property situated* outside of the Commonwealth, shall not be allocated in any part to this Commonwealth." (Italics supplied.)

Subsection (c) of this section then provides that the "remainder of such net income" shall be divided and apportioned by the three allocation fractions of tangible property, wages and salaries and gross receipts for determination of the tax payable.

This statutory language clearly indicates that the legislature intended to establish special provisions for

---

[2] As returned to and ascertained by the Federal Government with certain adjustments not here relevant.

allocating gains realized from the sale of tangible capital assets, and in doing so removed the subject matter of these special allocations from the three traditional allocation and apportionment factors otherwise applied to "net income" for the purpose of determining tax liability. If such capital assets consist of tangible personal property situated outside of the Commonwealth, no part of the gain derived from its sale is to be allocated to Pennsylvania, and, conversely, if situated in Pennsylvania, the gain is to be wholly allocated to Pennsylvania.

Thus, the statute not only requires a determination of whether a leasehold interest in real estate is tangible or intangible personal property but also whether its assignment constitutes a sale of a *capital asset situated within or without the Commonwealth*. To conclude otherwise would be to ignore the specific language of the statute affording this special treatment to only "capital assets if such assets consist of . . . tangible personal property."

Both parties to this appeal, however, have apparently assumed that the sale of the leasehold interest here in question produced a gain realized from the sale of a capital asset; a position which we neither affirm nor deny in passing upon this appeal.[3] It is a matter, however, that we cannot wholly ignore, inasmuch as the statute also requires a determination of where the tangible capital asset is "situated" for the purpose of allocating it within or without the Commonwealth.

What then did the legislature mean when it directed that a gain from the sale of tangible capital assets be wholly allocated to or wholly excluded from Pennsylva-

[3] That all sales of tangible personal property do not constitute sales of capital assets is fairly obvious. The significance to be attached to the Federal definition of "capital assets" and the treatment afforded to any particular capital transaction by the Federal Government in ascertaining the meaning of "capital asset" as employed in the statute presents more difficult questions.

nia depending upon where the particular tangible asset was situated at the time of the sale?

To make such a determination, we believe it is necessary to first examine the nature of the tax imposed by the Corporate Net Income Tax Act and the purposes intended to be accomplished through the application of these special allocation provisions and the general allocation and apportionment fractions contained in the statute.

In Commonwealth v. Bayuk Cigars, Inc., 50 Dauph. 243 (1940), the first case directly involving the nature of the tax imposed by this taxing statute, it was declared by this court that the tax was an excise or privilege tax rather than a property tax; and in Commonwealth v. Electric Storage Battery Co., 51 Dauph. 90 (1941), we held that the tax is not upon income as such but upon the privilege of doing business in Pennsylvania as measured by net income. In Commonwealth v. Warner Bros. Theatres, Inc., 345 Pa. 270 (1942), affirming 51 Dauph. 310 (1941), these holdings were approved by the Supreme Court of Pennsylvania in stating, pages 271-72:

". . . we are not considering an income tax, but an excise tax for the privilege of doing business in the Commonwealth, based upon net income as returned to and ascertained by the Federal Government. . . . Net income as ascertained is the base upon which the tax is measured, not the tax itself."

It is, therefore, now well established that the tax in question is an excise tax for the privilege of doing business in Pennsylvania.

In Commonwealth v. South Philadelphia Terminal, Inc., 75 Dauph. 233 (1960), affirmed 404 Pa. 293 (1961), in which the constitutionality of the act was sustained, this court declared the purposes of the general allocation and apportionment fractions to be as follows, page 240:

"The purpose of an allocating fraction is to assign to a state that portion of the corporation's activity which is exercised within the state as a result of a privilege granted in the certificate of authority. Each state has the right to establish a formula to be used for the purpose of assessing corporate net income tax, so long as the formula is uniform and reasonable. Various formulae including the one used in Pennsylvania have been sustained by the Supreme Court of the United States, Butler Bros. v. McColgan, supra.

"Since the various states of the union have not adopted a uniform method of allocating income, the possibility of overlapping of the apportionment formulae always exists. This possibility was recognized and held to be of no moment in the ordinary case. In Commonwealth v. Koppers Company, Inc., 397 Pa. 523, 530 (1959) the court held:

" 'The gross receipts fraction, as well as the tangible property and wages and salaries fractions, is part of a method used to apportion the income of a corporation doing business in more than one state so that each state may base its tax on only a portion of the income, a portion considered allocable to that state. Use of the three fraction formula has been held reasonable and valid: Butler Bros. v. McColgan, 315 U. S. 501, 86 L. Ed. 991 (1942), and Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 Atl. 37 (1936); even though that formula may not precisely measure the corporation's income actually attributable to the taxing state: Guaranty Trust Co. v. Virginia, 305 U. S. 19, 83 L. Ed. 16 (1938). Just as in cost accounting it becomes almost impossible to make a completely accurate cost analysis, so here in the allocation of income to the various taxing states there is usually some overlapping by the several states, which results in the imposition of a tax on more than 100% of the corporation's income. This is not constitutionally fatal and would only be declared so

when there has been an unreasonable distortion of income.

" 'Secondly, all three factors are designed as measures of corporate activity in the taxing state.' "

In our opinion, the purpose of the special allocation provision with which we are here concerned is but a further refinement of the purposes and objectives of the three general allocation fractions, i.e., to more precisely refine the allocation of a corporation's income in measuring the corporation's activity in the taxing State; and is based upon the theory that a particular type of income, which the legislature characterizes as a "gain" realized from the disposition of a tangible capital asset, is essentially attributable to the place where such particular type of property is located. For this reason, the legislature has declared that such income should not form a part of its ordinary income otherwise apportionable to measure the corporation's activity in the Commonwealth.

In this sense, a gain is something which results from that which is ordinarily referred to as a capital transaction and not that which produces ordinary income as that term is generally employed.

Consistent with this concept, we believe that the legislature, in limiting this special allocation factor to gains realized from the sale of tangible capital assets, intended to restrict it to (a) capital transactions, which the parties hereto assume to be the case in the sale of a leasehold interest, and (b) to that type of personal property which possesses the essential characteristics of tangible personal property as historically understood and defined, i.e., having physical qualities permitting it to be felt and touched and necessarily corporeal as distinguished from that which is incorporeal and having no ascertainable situs except by legal fiction.

Not only does the legislature require that the prop-

erty which is the subject of these special allocation provisions be "tangible", but also that the allocation be made depending upon where such property is "situated." To give meaning to both of these words impels us to conclude that such property must be both corporeal and capable of having a situs determined by its corporeal being and not merely through that of a legal fiction.

Measured by these standards, it is our opinion that the leasehold interest here in question possesses none of the traditional characteristics of tangible personal property in that it is basically a contract right to the possession and enjoyment of real estate and, while an interest in real estate, and hence, denominated a chattel real, nevertheless is not something that is corporeal which has a situs by reason of its physical location.

Appellant, however, insists that a leasehold interest is tangible personal property and would have us conclude that being tangible personal property and being an interest in New York real estate, it must of necessity have a situs outside of the Commonwealth. In advancing this argument, appellant recognizes that although a leasehold interest is an estate in land, it has historically been considered to be personal property and not real estate. This concept originated in the early common law when a lease was considered to be nothing more than a contract right and has persisted to this day primarily because it does not possess the quality of an estate of inheritance. Being a peculiar form of personal property, it has been designated as a chattel real: Nicholson, Pennsylvania Law of Real Estate (3rd ed.) §363; Davis v. Investment Land Co., 296 Pa. 449 (1929); Townsend v. Boyd, 217 Pa. 386 (1907).

In Sheaffer v. Baeringer, 346 Pa. 32 (1943), our Pennsylvania Supreme Court, in discussing the nature of a leasehold interest, stated, page 34:

"Blackstone says, book II, chap. 9, §144: 'Because no livery of seisin is necessary to a lease for years, such lessee is not said to be seised, or to have true legal seisin of the lands. Nor indeed does the bare lease vest any estate in the lessee; but only gives him a right of entry on the tenement, which right is called his interest in the term, or interesse termini: but when he has actually so entered, and thereby accepted the grant, the estate is then, and not before, vested in him, and he is possessed, not properly of the land, but of the term of years; the possession or seisin of the land remaining still in him who hath the freehold.' A lease for years is only a chattel, or, as it is called, a chattel real; it is personal not real estate; it is not subject to the lien of a judgment and has none of the attributes of real property."

This hybrid form of property, therefore, has uniformly been considered to be personal property enjoying the nomenclature of a "chattel real." As such, appellant contends, as above noted, its essential characteristics to be such as to make it tangible personal property as distinguished from intangible personal property. The Commonwealth, on the other hand, contends that appellant's interest in the leasehold in question was merely that of the right to possession and enjoyment of the leased space, it was that particular right which appellant assigned and from which it derived the proceeds in question, and, therefore, essentially intangible in its characteristics. It cites Thompson on Real Property, vol. 3, §1017 (1959 ed.), as expressive of this position. This authority states:

"Tenancies for years.—A tenancy with an agreement for its termination on a date certain is a tenancy for a term not a tenancy at will. An 'estate for years' is a lease limited for a definite time, greater or lesser than a year. The leasehold thus created is *incorporeal and intangible property* separate and distinct from the fee." (Italics supplied.)

As general principles of law, the propositions advanced by both parties undoubtedly have merit. Within the meaning of the statute here in question, however, we believe, as previously expressed, that the legislature intended to limit this special allocation fraction to corporeal personal property having a determinable situs from its corporeal nature, and to allocate the proceeds derived from its sale to the situs of such property for the purpose of measuring its corporate activity within or without the Commonwealth.

The leasehold interest here in question, while admittedly an estate in real property, is just as clearly considered to be personal property. It, therefore, partakes of both tangible and intangible characteristics and for this reason has historically been denominated a chattel real. To attempt to first analyze the possible tangible and intangible qualities of such property, and then to weigh them for the purpose of determining wherein the balance lies, would, in our opinion, be a study in futility and in disregard of the language employed by the legislature in providing for this special allocation.

Appellant contends, however, that this court employed this very technique in the case of Commonwealth v. William Goldman Theatres, Inc., 84 D. & C. 293, 62 Dauph. 256 (1952). In that decision, the late President Judge Sohn held that a taxpayer's investment in the cost of erecting a theatre building on ground leased for a term of 25 years, title to which improvements vested in the landlord, represented "capital actually wholly employed within this state" under the Foreign Bonus Act of 1901. In reaching this conclusion, it was stated, 84 D. & C. 299-304:

"Thus the leasehold interest of defendant in the building and improvements, as described in the admitted or stipulated facts in this particular case, has characteristics of both a tangible and an intangible interest; tangible in respect to defendant's right to take

physical possession of the building and the improvements and to enjoy the fruits of such physical possessions, and intangible with respect to the defendant's enforceable right arising from the contractual terms of the lease agreement. Consequently, under the stipulated facts in this case, the building and improvements enjoyed by defendant under its leasehold in this case constitute tangible assets within the contemplation of the Act of 1901.

". . . In the instant case, the leasehold of the land for 25 years did confer a tangible property interest in defendant in the nature of a chattel real. Defendant, by virtue of the lease agreement, received a right to the possession and enjoyment of the land for a period of 25 years and to the possession and enjoyment of the buildings erected thereon. This right, without consideration of the question of title, is an interest in tangible property in the nature of a chattel real.

". . . The terms of the statute do not appear to lend themselves to an interpretation that only that property to which the foreign corporation holds title is subject to bonus; rather, the terms of the statute lend themselves to the expression of the legislative intention that all property utilized in Pennsylvania by the foreign corporation in the promotion of its corporate objectives and receiving the benefit and protection of the laws of Pennsylvania should be subjected to bonus payment. To place an artificial distinction on the basis of title would be to defeat the legislative intent."

We do not believe our decision in the Goldman case attempted to weigh the innumerable tangible and intangible characteristics of a leasehold interest for the purpose of determining a balance, nor do we believe it lends the controlling support to appellant's position here. The most significant fact in that case was the taxpayer's substantial capital investment in the improvement made to the real estate. The essential point

of the decision was that while the taxpayer did not own the improvement, it did through its leasehold interest enjoy its use and possession, and thereby realized profits from the investment and the benefit and protection of the laws of this Commonwealth in pursuit of its corporate objectives of operating a motion picture theatre. But even more importantly, in the Goldman case we were concerned with determining the meaning of "capital actually employed within the Commonwealth" as related to tangible property. A different statute with different language concerns us here.

In referring to the leasehold interest there involved, Judge Sohn stated that it had tangible characteristics "in respect to defendant's right to take physical possession of the building and the improvements" and that such a "right" is "an interest in tangible property." It is on this language that appellants contend the Goldman decision should control. Quite apart from the fact that different statutes are involved employing different language, we believe Judge Sohn in so expressing himself meant not the *right to* possession but rather the *actual possession* of the leasehold partook of tangible characteristics, for it is only then that the estate in real property became a present interest and not merely a contractual right which indisputedly is intangible in nature. A fair reading and careful analysis of that decision leads us to this conclusion.

We, therefore, conclude that the Goldman decision is not determinative of the issue here involved, and, for the reasons heretofore expressed, that the legislature intended only tangible personal property having the characteristics of corporeal property whose situs is fixed by its physical location to be the subject of the special allocation provisions of the statute here involved. A leasehold interest is not such tangible personal property and is, therefore, not within the meaning of the statute which excludes from taxation gains

derived from the disposition of tangible personal property situated outside of the Commonwealth.

The parties have stipulated in writing that if the court finds that "the $200,000 representing the payment to defendant for the leasehold interest is subject to tax . . . then judgment shall be entered in favor of the Commonwealth in the amount of $2,401.79, plus interest at the rate of six percent per annum from April 15, 1956, to date of payment."

For the foregoing reasons, we make the following

### CONCLUSIONS OF LAW

1. The special allocation fraction contained in section 2 of the Corporate Net Income Tax Act which, in case the entire business of a corporation is not transacted within this Commonwealth, excludes from taxation gains derived from the disposition of tangible capital assets situated outside of the Commonwealth, is limited in its application to tangible personal property possessing corporeal characteristics whose situs is determinable from its physical location and not by legal fiction.

2. The gain derived by appellant in the assignment of its interest as tenant in a leasehold of New York City real estate did not result from its sale of a tangible capital asset within the meaning of said statute.

3. The Commonwealth's settlement of appellant's corporate net income tax for the calendar year 1955, as modified and reduced by the stipulation filed by the parties to this appeal, was proper and lawful.

4. Appellant's appeal as amended by said stipulation must, therefore, be dismissed.

Accordingly, we enter the following

### ORDER

And now, June 15, 1965, the appeal of Century Industries Co., Inc., as amended by written stipulation of the parties is hereby dismissed and it is directed

that judgment be and is hereby entered in favor of the Commonwealth and against Century Industries Co., Inc., in the amount of $2,401.79 with interest at the rate of six percent per annum from April 15, 1956, unless exceptions be filed to this order within 30 days hereof.

The prothonotary shall notify the parties hereto or their counsel of this order forthwith.